**VITEX MANUFACTURING COMPANY, LTD.**

**v.**

**THE GOVERNMENT OF THE VIRGIN ISLANDS, Appellant**

No. 15,188

United States Court of Appeals

Third Circuit

Argued May 21, 1965

Decided October 13, 1965

*See, also, 351 F.2d 313*

FRANCISCO CORNEIRO, ESQ., St. Thomas, Virgin Islands, *for appellant*

LEONARD FELDMAN, ESQ. (EIBER, OKIN, RAFSKY & FELDMAN), New York, New York, *for appellee*

Before BIGGS, *Chief Judge,* and STALEY and GANEY, *Circuit Judges*

STALEY, *Circuit Judge*

### OPINION OF THE COURT

To encourage the establishment of new business and the investment of capital, the Virgin Islands enacted an Industrial Incentive Program. Act No. 224, Virgin Islands Sess. Laws (1957). Tax and fee exemptions, as well as industrial subsidies were to be granted to certain businesses and industries to achieve this end.

"(e) In order that the encouragement tendered by this Act . . . [would have] a real and unmistakably sure basis, the Government of the Virgin Islands . . . declare[d] that it consider[ed] all orders granting subsidies and tax exemptions made available under the provisions of this Act as being in the nature of a contract or agreement between the Government . . . and the persons or corporations receiving the benefit of subsidies or tax exemptions, and that it [would] not adopt any legislation which [would] impair or limit such subsidies or tax exemptions. . . ." Act No. 224 § 1(e), Virgin Islands Sess. Laws (1957).

Vitex Manufacturing Company, Limited ("Vitex") invested substantial amounts of capital to establish its woolen processing and finishing operations in the Virgin Islands. The district court found that these investments were induced by the availability of the tax and fee exemptions and subsidies. Vitex applied for and received on June 15, 1962, the tax and fee exemptions and subsidies made retroactive to September, 1961[1] Pursuant to § 11 of the act, all exempt industries were to employ a minimum of 75% of their employees from resident sources. However, that same section also provided that temporary permits could be granted by the Tax Exemption Board (the statutory predecessor

---

[1] The tax exemptions and subsidies were granted for a ten-year period to end September 12, 1971. See Act No. 224 § 3, Virgin Islands Sess. Laws (1957), as amended, 33 V.I.C. § 4105(3) (Supp. 1965).

to the Industrial Incentive Board) to employ a greater percentage of aliens if resident labor was unavailable. Vitex obtained from the Board permission to employ up to 50% aliens, such permission ostensibly to expire on August 31, 1962. Two months after the limitation had expired, Vitex made application for an extension of the temporary permit, as sufficient resident labor was still unavailable. The Board replied by sending a notice of a hearing to Vitex with an order to appear and show cause why its tax exemption certificate should not be revoked. Both in the notice and at the hearing which followed, the only matter discussed was whether Vitex had violated the 75% quota requirements of § 11, in view of the time limitation that had been imposed by the Board.

On January 9, 1963, one day after Vitex's hearing, the Board met in executive session and voted to recommend to the Governor that the tax exemption certificate of Vitex be revoked. We believe the facts found by the district court, fully supported by the record, indicate more completely the circumstances surrounding the Board's deliberations:

"12. On January 9, 1963, the Virgin Islands Industrial Incentive Board in executive session, not only considered the availability of resident employees, but also considered facts and issues wholly unrelated to the question of available employees. Thus, it was established at the trial that the Governor of the Virgin Islands met with the Industrial Incentive Board prior to the executive session of January 9, 1963, and expressed his views regarding the appell[ee][2] and its place in the economy of the Virgin Islands as it affected certain mainland industries and its right to continue to enjoy tax exemptions and subsidies. It was also established that the Board included the Governor's views in its deliberations while in executive session and also considered certain *ex parte* communications from the Governor which were not disclosed to the appell[ee] and

[2] Because Vitex was the appellant before the district court, that court's opinion refers to it as such; however, for the sake of clarity we have modified the quoted sections of the opinion to conform with the status of Vitex before us.

which related to the appell[ee]'s place in the economy of the Virgin Islands * * * .

"13. At no time did the Board ever advise the appell[ee] that appell[ee]'s place in the economy of the mainland and the Virgin Islands and its right to continue to enjoy tax exemptions and subsidies would be considered by the Board or were under consideration by the Board, and appell[ee] received no notice of any such issue.

"14. The minutes of the executive session of the Board which was held on January 9, 1963, conclusively established that the Board considered matters not alluded to at the public hearing on January 8, 1963, in determining whether Vitex had complied with Section 11 of Act No. 224 and, as a matter of fact, it was established that other alleged violators of the 1957 Act were adjudged purely on the basis of compliance or non-compliance with Section 11, as distinct from the considerations and issues which determined the Board's conduct with regard to appell[ee].

"15. Other alleged violators of Section 11 of Act No. 224 (1957 Session Laws, 154) appearing on January 8, 1963, in response to a notice to show cause why their Certificates of Tax Exemption should not be revoked were Lee Manufacturing Company, Virgin Isle Hilton Hotel and Sapphire Beach Club. All except the Lee Manufacturing Company were found in violation of the law restricting alien employment; but nevertheless, no revocation or modification of any Certificate of Tax Exemption occurred to any of the alleged violators except appell[ee]."

On the basis of the Board's January 9 deliberations, the Governor was advised to revoke Vitex's certificate. The Governor, in a letter dated March 27, 1963, requested the Board to reconsider its recommendation in the light of the enactment of recent legislation and the proposal that Vitex voluntarily surrender its tax exemption certificate. Upon the Governor's approval of the Board's revised recommendations, the order reviewed here was then issued. In effect, the order deprived Vitex of most of the benefits it had previously enjoyed.

Upon application to the district court, the order was revoked on the grounds that Vitex had been denied due process because the notice and hearing did not include

matters which were the basis of the Board's decision. Although the district court found the violations of the 75% quota requirement to be a "mere technical oversight," it concluded that the Board's recommendation and the Governor's order were "arbitrary and capricious." Act No. 224 § 9 (b).

■ ■ We agree with the result reached by the district court; however, we are unable to concur fully with its reasoning. It is clear to us that the district court's conclusion that Vitex had violated the statute was erroneous.[3] Section 11 of the 1957 Act provides:

"Section 11. Not less than seventy-five (75%) per cent of all persons employed in any new industry, subject to this law, shall be legal residents of the Virgin Islands. Provided, that the Board shall have the right to grant temporary permits to any new industry applying for or receiving benefits under this law to employ a greater percentage of non-residents of the Virgin Islands, when it is conclusively proven to the Board that residents with the necessary ability to perform the services required are not available within the Virgin Islands and the industry is or will be greatly handicapped as a result thereof; provided further that *the Board shall revoke or modify the permit whenever it appears that the necessary services have become available within the Virgin Islands.*"[4] (Emphasis supplied.)

---

[3] Of course, the decision of a district court may be affirmed here if the result is correct, even though we disagree with its reasoning. J.E. Riley Investment Co. v. Commissioner, 311 U.S. 55, 59 (1940); United States v. Rose, 346 F.2d 985, 989 (C.A. 3, 1965); In re Ko-Ed Tavern, Inc., 129 F.2d 806, 810 (C.A. 3, 1942); Century Distilling Co. v. Continental Distilling Co., 106 F.2d 486, 488 (C.A. 3, 1939), cert. denied, 309 U.S. 662 (1940).

[4] It is not clear that the technical violation found by the district court was of the 1957 Act, Act No. 224, or of the Act as amended in 1961, Act No. 798 (approved November 3, 1961). Although the certificate granted to Vitex postdated the effective date of the 1961 Amendments, it is conceded by the appellant that the tax exemption certificate was granted under the 1957 Act and that the 1957 Act applies here. Because of this, we are not called upon to decide the "more difficult question" of reconciling Act No. 224 of 1957 with Act No. 798 of 1961 as was posed by Judge Maris in King Christian Enterprises v. Government of the Virgin Islands, 345 F.2d 633, 638 (C.A. 3, 1965).

The 1961 Amendments to the Industrial Incentive Act significantly changed the provision regarding the employment of residents by limiting the grant of temporary permits to six months and placing the burden on the tax exempt beneficiaries to show non-availability of resident labor

Vitex was found by the Board (and also the district court) to have violated this section of the Act. Vitex could only be found in violation of the Act if the time limitation imposed by the Board upon its permission to exceed the statutory quota was valid. As we read the section, temporary permits to employ less than 75% resident labor could be revoked *only* if "it appears [*to the Board*] that the necessary services have become available" *and on the happening of no other event.*

 We are compelled to apply this construction for two reasons. First, as has already been indicated, the Government had offered to treat the grants of exemptions and subsidies as in the nature of a contract. The district court found as a fact that Vitex had relied on the Industrial Incentive Program in establishing its Virgin Islands' operations. The inducements contained in the incentive program are clearly in the nature of an offer, and in fact, constitute a written embodiment of the terms on which a business would establish or invest in the Virgin Islands. Since these are the only written terms, it is proper to construe the language against the party using it. 4 Williston, Contracts § 621 at 760-761 (3d Ed.), citing Stoner v. Bellows, 196 F.2d 918 (C.A. 3, 1952), cert. denied, 345 U.S. 938 (1953); Fairbanks, Morse & Co. v. Consolidated Fisheries Co., 190 F.2d 817 (C.A. 3, 1951). The mere fact that a government or governmental subdivision is one of the contracting parties does not preclude application of this rule of construction. See 4 Williston, Contracts § 626 at 850 (3d Ed.).

---

to secure extensions. Since Vitex established itself in the Virgin Islands in reliance upon the 1957 Act and because its certificate was both granted under and is concededly governed by the 1957 Act, the 1961 Amendments did not affect its status. As indicated above, the Government sought to demonstrate its good faith to businesses that would locate there by considering all grants of exemptions and subsidies to be in the nature of a contract. That provision would be meaningless if the Government could unilaterally change provisions which were found to be detrimental to it after a company had invested thousands of dollars in reliance upon such legislation.

435

Secondly, the subsequent action by the legislature supports this interpretation. By including a time limitation in the 1961 Amendments, which the legislature also could have included in the 1957 Act, it is clear to us that the legislature intended no such interpretation of the 1957 Act.

We therefore conclude that the Board had no power to proscribe a time limitation when it granted to Vitex a temporary permit to employ greater than 25% non-resident labor. Such a permit could be modified or revoked only upon a finding by the Board that resident labor was available. The parties do not dispute (and the district court so found) that at all times pertinent there was insufficient resident labor to meet Vitex's requirements. In view of this fact, the Board's revocation of the temporary permit to exceed the statutory quota was arbitrary and capricious, and therefore the subsequent modification of Vitex's tax exemption certificate on such an erroneously based recommendation by the Board was without authority in law and cannot stand.[5]

One further matter requires comment. We are satisfied that the district court correctly found that the recommendation of the Industrial Incentive Board was based, at least in part, upon considerations relating to the role of Vitex in the economy of the Islands.[6] Neither the notice of hearing nor the recommendation of the Board mentions any matter but the violation of § 11 of the Act. Yet the Board in private heard the Governor's views on the role of Vitex in the economy of the Islands and the mainland before its meeting on January 9, and it considered the questions he posed at

[5] It goes without saying that the Board could not recommend revocation of a tax exemption certificate without providing a hearing thereon after proper notice even if sufficient resident labor had become available.

[6] The district court, upon substantial evidence in the record, found:
"21. It was also conclusively established that the Industrial Incentive Board modified Appellant's tax exemptions and subsidies not by reason of any violation of Section 11 of the 1957 Act, but because the Board felt that the grant of tax exemptions and subsidies should be reconsidered in the light of Appellant's profitable activities and their effect on competition on the mainland."

the executive session held that evening. It is reasonable to assume that the Board weighed his implied suggestion that the Islands could do without Vitex. This reasoning is especially plausible since Vitex was the only one of a number of violators, as the Board read the statute, to have its certificate revoked.

■ While we do not find it necessary to determine whether Vitex was denied due process, we feel constrained to express strong disapproval of the procedures exercised by the Board and the Territorial Governor. The Industrial Incentive Board is an independent, statutorily created body performing quasi-judicial or administrative functions. 3 V.I.C. § 334(a) (Supp. 1965). It was established as part of the Office of the Government Secretary, Act No. 798 § 35b, Virgin Islands Sess. Laws (1961), not part of the office of the Governor. Likewise, the statute from which it derives its authority to act prescribes the standards to be applied by it in the conduct of its functions, which may not be disregarded merely because the Governor believes that other considerations should enter into its deliberations and recommendations.

The decision of the district court will be affirmed.