HMW INDUSTRIES, INC., Petitioner

v.

REUBEN B. WHEATLEY, Commissioner of Finance, Respondent

Civil No. 231-1973

District Court of the Virgin Islands

Div. of St. Croix

December 13, 1973

BRYANT, COSTELLO & BURKE, Christiansted, St. Croix, V.I., *for plaintiff*

313

VERNE HODGE, Attorney General, St. Thomas, V.I., *for defendant*

YOUNG, *District Judge*

### MEMORANDUM OPINION AND JUDGMENT

This action brings into question the proper treatment for Internal Revenue purposes of subsidies granted under Act No. 224, the 1957 forerunner to our present Industrial Incentive Program legislation. More specifically, the issue presented is whether subsidies paid under Act No. 224 are nonshareholder contributions to capital subject to the tax treatment prescribed by Section 362(c)(2) of the Internal Revenue Code.

### I. THE FACTS

Petitioner, HMW Industries, Inc., is a Pennsylvania corporation formerly known as Hamilton Watch Company. Prior to August 4, 1969, petitioner owned all of the outstanding stock of Standard Time Corporation ("STC"), a Virgin Islands corporation. On August 4, 1969, STC was liquidated and its assets were distributed to petitioner in a transaction qualifying under Section 332 of the Internal Revenue Code for nonrecognition of gain or loss. Under Section 334(b)(1), then, the basis of STC's assets in petitioner's hands was the same as STC's basis in those assets prior to the liquidation. Relying on this carry-over basis, petitioner computed its income tax liability for the period August 5, 1969 through January 31, 1970, using STC's basis in its inventory as its tax basis for opening inventory. By thirty-day letter dated June 2, 1972, a deficiency of $181,548.80 was proposed in petitioner's income tax liability. The entire deficiency was based on respondent's contention that subsidies received by STC under Act No. 224 were nonshareholder contributions to capital, reducing STC's basis in its inventory and there-

fore petitioner's opening carryover inventory basis as well. This reduction in the basis of opening inventory had the effect of decreasing petitioner's cost of goods sold, thereby increasing its taxable income for the fiscal year ended January 31, 1970.

## II. STC SUBSIDY UNDER ACT NO. 224

STC was granted its subsidy under Act No. 224 on August 6, 1959. It is logical to begin my analysis of the question presented here with an examination of the law as it existed at that time. Since the Naval Appropriations Act of 1921 the income tax laws of the United States have been applicable to the Virgin Islands. Section 1397 of Title 48 of the United States Code has, from 1921 to the present, provided that:

> The income tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in the Virgin Islands of the United States, except that the proceeds of such taxes shall be paid into the treasuries of said islands.

Although the income tax laws of the United States were made applicable to the Virgin Islands, it was still necessary for taxpayers to file two returns: one with the United States and one with the Virgin Islands, with a foreign tax credit on the U.S. return for tax attributable to Virgin Islands income. Int. Rev. Code of 1954, § 901(b)(1). The necessity for double returns was eliminated in the case of permanent residents of the Virgin Islands by the Revised Organic Act of 1954. Section 28(a) of that law provided that inhabitants of the Virgin Islands "shall satisfy their income tax obligations under applicable taxing statutes of the United States by paying their tax on income derived from all sources both within and outside the Virgin Islands into the Treasury of the Virgin Islands."

In 1959, then, the Virgin Islands Income Tax law mirrored that of the United States. 33 V.I.C. § 1931(15). The Virgin Islands was a "distinct taxing jurisdiction" although its income tax law arose from the identical statute applicable in the United States. Dudley v. Comm'r of Internal Revenue, 3 V.I. 685, 691, 258 F.2d 182, 185 (3d Cir. 1958). Given this incorporation of United States income tax law as the territorial income taxing statute, it becomes necessary to inquire whether the legislature of the Virgin Islands was empowered to affect in any way, by modification or addition, the impact of this law on a corporation such as STC. This question is of substantial importance because it appears that such a modification of the effect of the income tax law was attempted by the legislature in passing Act No. 224.

Act No. 224 was designed to extend such inducements and render such aid as necessary to encourage corporations and others to establish and develop new business enterprises in the Virgin Islands. In addition to providing exemptions from specifically listed, locally imposed taxes, a special "nontaxable subsidy" in the amount of 75% of the income tax paid into the Treasury of the Virgin Islands was granted. Act No. 224, Section 6(a), Virgin Islands Session Laws 1957 at 150. Because the exemption from property taxes, gross receipts taxes and other locally imposed taxes were specifically and separately granted, the legislature's provision that the subsidy was to be "nontaxable" must have had reference to the income tax imposed under the Internal Revenue Code as made applicable to the Virgin Islands. The effect of the subsidy then, would be to reduce by 75% the income tax liability of certain grantees under the Act. The clear intention of the legislature (and understanding by corporations induced to establish businesses in the Virgin Islands) was that this "subsidy" was to be a reduction of income taxes. This intention would

be frustrated by a ruling that the payments constituted nonshareholder contributions to capital, reducing the basis of the grantees assets and in many cases causing an immediate increase in taxable income in the amount of the subsidy. But the intention of the Virgin Islands legislature as expressed in Act No. 224 becomes irrelevant if that body lacked the power to alter the effect of the income tax law in the manner attempted.

In analyzing this question of power it is important to note that the incorporation of the Internal Revenue Code into Virgin Islands law differs from ordinary cases of incorporation encountered by courts. When one jurisdiction voluntarily adopts the statutory language of another, it, of course, retains the power to alter the law in the future. Moreover, legislatures often intend merely a verbal incorporation of another jurisdiction's statute and reserve the right, in their courts, to interpret the law differently from the way in which it applied in the original drafting jurisdiction. But here, my analysis cannot take place within the same framework which two separate independent jurisdictions present; nor does this case represent the ordinary voluntary incorporation. Instead, the statute in question was imposed by the Congress of the United States on a territory pursuant to its constitutional power to make rules and regulations concerning the territories. U.S. Const. Art. 4, § 3, cl. 2. When the Congress enacts the Internal Revenue Code as the income tax law for the Virgin Islands it acts as the exclusive sovereignty having absolute and undisputed power of governing and legislating for the territory. U.S. v. Kagama, 118 U.S. 380 (1886); Sere v. Pitot, 10 U.S. 332 (1810). If it denies the territorial legislature the power to vary the effect of the law on individual taxpayers, the power does not exist and cannot be exercised.

317

The question, then, when viewing the problem as of 1959 when the STC subsidy was granted is whether the Congress had denied the Virgin Islands legislature the power to legislate a reduction in income tax liability. Section 1397 which provides that the income tax laws of the United States "shall be held to be likewise in force in the Virgin Islands" does not explicitly deny the Virgin Islands legislature this power. But where Congress enacts such a pervasive scheme of taxation for the territory, an intention to preempt the field and deny authority to vary the statute's effect may be implied. See Bethlehem Steel Co. v. New York State Labor Relations Bd., 330 U.S. 767 (1947); Napier v. Atlantic Coast Line R.R., 272 U.S. 605 (1926); Northern States Power Co. v. Minnesota, 447 F.2d 1143 (8th Cir. 1971). Indeed, preemption may more readily be implied when a territory is involved because its legislative power derives solely from a permissive act of Congress (Revised Organic Act of 1954, § 8(a)) and no problem of "dual sovereignties" is presented. See California State Bd. of Equalization v. Goggin, 191 F.2d 726 (9th Cir.), cert. denied, 342 U.S. 909 (1951).

Before concluding too rapidly that Congress intended to deny the Virgin Islands legislature authority to affect the operation of the Internal Revenue Code in the territory, the general purpose for making the U.S. income tax law applicable in the Virgin Islands and payable directly to the territory should be examined. It has been observed by several Courts that Congress acted in order "to assist the Islands in becoming self-supporting." Dudley, supra at 691; Chicago Bridge & Iron Co., Ltd. v. Wheatley, 7 V.I. 126, 131, 295 F.Supp. 240, 242 (D.C.V.I. 1969). Certainly, the large revenues produced by the income tax were thought to be and are of great aid to the Virgin Islands in its efforts to develop economically. But the legislature of the Virgin Islands determined that the future

interests of the Islands were better served by offering the incentive of a temporary reduction in tax liabilities to new businesses than by collecting the entire tax from those taxpayers already present in the territory. This effort was entirely compatible with the intention of Congress because it was directed at the same end: achieving a self-supporting Virgin Islands. Of course, where a clear conflict in means to bring about the same legislative end is presented, the wisdom of Congress must prevail. However, Act No. 224 seems not to represent a conflicting means but rather a consistent, supplemental approach to the problem. It can at least be said that it was not clearly "inconsistent with . . . the law of the United States" and therefore absolutely beyond the power of the Virgin Islands legislature. Revised Organic Act of 1954, § 8(a).

The question whether the Virgin Islands had the power, as of 1959, to reduce the income tax liability of STC under Act No. 224 is, therefore, quite complex. For reasons that I will discuss shortly, I have concluded that it is unnecessary for me to authoritatively resolve the problem. Important legislation passed by Congress in 1960 shed new light on the question and, in my view, given the facts of the case, avoids the issue which would otherwise have to be faced.

### III. SECTION 934 OF THE INTERNAL REVENUE CODE

Shortly after the passage of Act No. 224, Congress reacted to the attempt by the Virgin Islands legislature to reduce the income tax liability of certain taxpayers. The new general rule now contained in Section 934(a) of the Code is that tax liability incurred to the Virgin Islands under the Internal Revenue Code as made applicable to the territory by Section 1397 "shall not be reduced or remitted in any way, directly or indirectly, whether by grant, subsidy, or similar payment, by any law enacted in the Virgin Islands . . . ." Both the Senate and House

Reports on the bill reveal that Act No. 224 had achieved "substantially the same effect" as a "rebate" of income taxes. Senate Report No. 1767, 86th Cong., 2d Sess. included in 1960–2 Cum. Bull. 829 at 830–832; [hereinafter Senate Report] House Report No. 1131, 86th Cong., 1st Sess. included in 1960–2 Cum. Bull. 811 at 813–815 [hereinafter House Report].

It is important to note that the concern of Congress was that Act No. 224 granted such rebates "with respect to the tax attributable both to income from sources within the Virgin Islands and from sources within the United States." Senate Report, House Report. Such a broad reduction in income tax liability represented a "windfall gain" to taxpayers. While both committees recognized the desirability of economic development of the Virgin Islands, it was thought that Act No. 224 provided an additional, unnecessary incentive because it failed to limit the reduction in tax to Virgin Islands income. A properly limited reduction in income tax liability as an incentive for new businesses to locate in the Virgin Islands was not objectionable to the committee members. Therefore, a number of exceptions to the general rule stated in Section 934(a) were provided.

One such exception allowed the Virgin Islands legislature to reduce the income tax liability of a corporation to the extent that its income derived from sources without the United States if the following two conditions were met:

(1) 80 percent or more of the gross income of such corporation for the 3 year period immediately preceding the close of the taxable year was derived from sources within the Virgin Islands; and

(2) 50 percent or more of the gross income of such corporation for such period or such part thereof was derived from the active conduct of a trade or business within the Virgin Islands.

A corporation satisfying these conditions which supplied information for the purpose of determining the applicability of the exception, would be eligible for a reduction in

income taxes on Virgin Islands income, if the legislature of the Virgin Islands so provided.

■ Given this authorization of limited reduction in income tax liability, it is necessary to examine the effect of a payment made under an appropriately drafted Virgin Islands statute as a rebate of income tax. Assuming that a new statute limiting the rebate to tax attributable to Virgin Islands income was enacted (the Industrial Incentive Legislation has been so limited, 33 V.I.C. § 4071 (a) (2) ) and a corporation qualifying under § 934(b) was granted and received special subsidy equal to 75% of the income tax paid, would this payment constitute a non-shareholder contribution to capital? I think not for several reasons.

First, the intention of the Virgin Islands legislature in passing such a statute would be to reduce the income tax liability of the taxpayer grantees. This intention was revealed in Act No. 224 by the specific statement that the subsidy rebate was to be nontaxable. Later Industrial Incentive legislation contains numerous indications that the subsidy was designed solely to reduce income taxes by refunding a portion of the tax paid. See 33 V.I.C. § 4108 (b); § 4071(a) (2). The intention of the Virgin Islands legislature, then, was that these payments were to be in reduction of income tax and not contributions to corporate capital which would have independent tax significance under Section 362(c) (2) of the Internal Revenue Code.

Of course, the intention of the Virgin Islands legislature is not controlling if the Congress has provided otherwise. But it is my view that Congress in enacting Section 934(b) understood the purpose and effect of Act No. 224 and intended to authorize the reduction in income taxes desired by the Virgin Islands legislature, with the important limitation (as to income source) previously discussed. Therefore, income tax reduction payments made by the Virgin

Islands under an appropriately limited statute would, pursuant to the authority granted by Section 934(b), be merely a return of income tax dollars and not nonshareholder contributions to capital.

The second reason which prompts me to conclude that the payments would not be nonshareholder contributions to capital is the characterization of the subsidies by the National Office of the U.S. Internal Revenue Service. In Revenue Ruling 69-433, 1969–2 Cum. Bull. 153, a U.S. parent corporation was held to be entitled to a foreign tax credit with respect to dividends received from a Virgin Islands subsidiary based on the *net* amount of taxes paid to the Virgin Islands by the subsidiary (that is, with a deduction for the incentive subsidies received by the subsidiary). For the purposes of Section 902(a)(2) of the Code, then, it was held that "the amount of the subsidy is not an item of gains, profits, or income but is considered merely a reduction in the amount of the taxes paid to the Virgin Islands." Revenue Ruling 69-433, supra. It is true that the Revenue Ruling addresses only the foreign tax credit problem and it is possible to confine its characterization of the payments as a reduction of income taxes to that area alone. However, I think the ruling represents not only an attempt to deal with a narrow issue under Section 902(a)(2) but also a more general recognition that the subsidies are best treated as reductions in income taxes. Even if the ruling is confined entirely to the foreign tax area, I still find its characterization of the subsidies for that purpose of some help to me in reaching a similar conclusion as to their proper treatment under other provisions of the Code.

Finally, my conclusion that payments made under a grant of the Virgin Islands pursuant to Section 934(b) should not be treated as nonshareholder contributions to capital is further supported by strong policy considera-

tions. As I have discussed elsewhere in this Opinion, the purpose of the Industrial Incentive laws, Section 934(b) and the extension of the Internal Revenue Code to the Virgin Islands was and still is to promote the economic development and self-sufficiency of the Virgin Islands. The promise of tax reductions has been an important incentive for new businesses to locate in the Virgin Islands. In order to assure companies that this favorable treatment would not be subject to withdrawal at the whim of the legislature, it was provided that the arrangement was "in the nature of a contract" between the government and the company. Act No. 224 § 1(e); 33 V.I.C. § 4001(b). Congress understood that the Virgin Islands had made these firm commitments (and would make others in the future) when it enacted Section 934(b). To deny taxpayers who were induced to establish new businesses in the Virgin Islands the benefits they reasonably anticipated receiving would do immeasurable harm to the economy of the territory and render uncertain indeed its prospects of attracting any additional investment. I feel that a holding that subsidies designed to refund income taxes are nonshareholder contributions to capital, often causing an immediate increase in taxable income in the amount of the subsidy, would constitute such a denial of promised benefits. This consideration, together with the others I have mentioned, convinces me that the payments would have to be treated not as a contribution to capital, but as merely a reduction of income tax.

This conclusion, then, would require me to hold that a subsidy granted under an appropriately drafted statute after the specific authorization by Congress in Section 934 (b) was not a nonshareholder contribution to capital. However, in this case the payments in question were made pursuant to Act No. 224, passed prior to the enactment

of Section 934(b). I turn now to the question whether this difference necessitates a contrary conclusion.

## IV. TREATMENT OF ACT NO. 224 SUBSIDIES PAID AFTER ENACTMENT OF SECTION 934(b)

■ In Section II of this Opinion I discussed the uncertain status of Act No. 224 prior to passage by Congress of Section 934(b) and concluded that I need not decide whether the act was authorized nor how payments received prior to 1960 should be treated for tax purposes. I felt these questions were avoided by the facts of this case because the taxable year in question ended on January 31, 1970. I will now explain briefly my reason for so deciding.

It might be argued that because the status of Act No. 224 was uncertain, post 1960 payments in reduction of taxes made pursuant to grants under it would have to be treated differently than subsidies initially granted after Section 934(b) was passed by Congress. I do not think different treatment is warranted because the payment should be characterized as of the time it was made rather than at the time it was first authorized. When the subsidy in question was paid, section 934(b) was law. Section 4(e) (1) of the Act of September 14, 1960 which contained Section 934(b) provided that it would "apply to tax liability incurred with respect to taxable years beginning on or after January 1, 1960." This is such a taxable year. Therefore, because I have concluded that subsidies granted and paid after the enactment of Section 934(b) are not nonshareholder contributions to capital, I have no reason for reaching a different conclusion with respect to that part of a subsidy granted before 1960, but paid afterwards. If STC satisfied the requirements set forth in Section 934, the subsidy it received in the year prior to its liquidation was a payment in reduction of taxes. Such a

payment is not a nonshareholder contribution to capital and would not result in a reduction of the basis of STC's assets. Therefore, petitioner could correctly include as opening inventory for the period in question, the proper basis for STC's closing inventory, unreduced by the amount of the subsidy received.

## JUDGMENT

For the reasons stated in the above Memorandum Opinion, it is hereby ADJUDGED, ORDERED and DECREED:

(1) That Judgment for Petitioner on the pleadings pursuant to Rule 12(c) be GRANTED; and

(2) That Respondent recompute Petitioner's tax deficiency, if any, without treating subsidies received by STC prior to its liquidation as nonshareholder contributions to capital.