ANTILLES INDUSTRIES, INC., Plaintiff

v.

GOVERNMENT OF THE VIRGIN ISLANDS, ET AL.,

Defendants

Civil No. 70-423

District Court of the Virgin Islands

Div. of St. Croix

January 21, 1975

ISHERWOOD & COLITANNI, ESQS. (THOMAS ALKON, ESQ., of counsel), Christiansted, St. Croix, V.I., *for plaintiff*

DONALD BOUTON, ESQ., Assistant Attorney General, St. Thomas, V.I., *for defendants*

YOUNG, *District Judge*

# I

## BACKGROUND FACTS

Antilles Industries, Inc. (herein "Antilles") brings this action against the Government of the Virgin Islands (herein "Government") for the breach of a contract originally entered into between the latter and Delaware Watch Company (herein "Delaware"). On December 7, 1961, pursuant to the provisions of Act. No. 224, the Government granted Delaware a "Certificate for Tax or Fee Exemptions and Subsidies", which was to be effective for a period of ten years commencing on December 16, 1960. Delaware engaged in the manufacture and assembly of watch movements until August, 1962, when it halted production due to financial difficulties. Remaining dormant throughout the ensuing period of time, Delaware, warranting that its tax certificate was in good standing, sold all of its assets to Antilles on April 6, 1965, by execution of a Bill of Sale which purported to include inter alia Delaware's claim to tax exemptions and subsidy benefits.

Prior to the acquisition, Antilles, also actively engaged in the watch business, wrote to the Attorney General of the Virgin Islands, noting its intention to purchase Delaware's watch production business and requesting verification as to its eligibility to succeed to the unexpired portion of Delaware's certificate. On February 15, 1965, the Acting Attorney General responded by suggesting that the proposed assignment fell within Section 4106 of Act 798, but added that approval thereof by the Board was necessary.

On March 26, 1965, Antilles submitted an application to the Board for the transfer of the Delaware certificate. The

339

Board failed to act on the application for transfer for five months, at which time Antilles withdrew its application, but reserved the right to reapply. This right of reapplication was acknowledged by the Board in a letter dated August 10 of the same year.

During the pendency of its application for transfer, Antilles submitted an independent application for a Certificate of Tax Exemption and Subsidies in its own right. The withdrawal of the application for transfer, then, amounted to a strategic assessment by Antilles that the pendency of both applications might jeopardize action on its application for an independent grant. On September 27, 1968, after its application for an independent grant was denied by the Governor, Antilles reapplied for approval of the transfer of Delaware's certificate.

Seven months later, the Government published a notice for Delaware to appear and show cause why its certificate should not be revoked for failure to engage in the business for which the tax benefits were granted. On May 7, 1969, Antilles appeared by counsel and with witnesses prepared to prove its entitlement to the benefits of Delaware's certificate by virtue of the aforementioned assignment. The Board, however, refused to hear testimony, asserting that the issue noticed was the revocation of Delaware's certificate rather than the validity of the transfer thereof. Additionally, the Board determined that Antilles lacked standing to present evidence on the issue of revocation. On November 4, 1969, the Board met in Executive Session without having scheduled a subsequent hearing and agreed to recommend that the application for transfer of Delaware's certificate to Antilles be denied. Almost one year later on October 27, 1970, Governor Evans notified Antilles that its application for transfer was denied, at which time the instant action was commenced.

## II

## TRANSFERABILITY OF ACT NO. 224 CERTIFICATES

Act No. 224, under which Delaware was granted its certificate, was replaced on January 1, 1962 by Act No. 798. Throughout their correspondence and continuing up to the commencement of this action by Antilles, both Antilles and the Government assumed incorrectly that Section 4106 of Act No. 798[1] governed the transferability of Delaware's Tax Exemption Certificate. This assumption, however, ignored Section 4115 of the same act, which reads in pertinent part:

"Nothing in this Act shall be construed to affect in any manner any tax exemption or subsidies heretofore granted under laws existing prior to the effective date hereof".

See also Vitex Mfg. Co., Ltd., v. Government of the Virgin Islands, 5 V.I. 429, 434–35 n.4 (3d Cir. 1965).

■ Unlike Act No. 798, its predecessor is devoid of any provision regarding the transferability of certificates, thereby raising difficult questions of statutory interpretation and legislative intent. Any meaningful interpretation of either statute, however, must begin with the important maxim that once a certificate granting subsidies has been issued by the Governor, a binding contract between the territory and the taxpayer arises. See Act No. 224, § 1(e), V.I. Sess. Laws (1957); Act No. 798, T. 33 V.I.C. §

---

[1] Section 4106 reads:

A certificate of tax exemption and/or subsidy benefits granted under the provisions of this subtitle may be transferred, for the unexpired portion of the term of the certificate, to another person, firm, or corporation who, or which, succeeds the beneficiary in carrying on, or in operating, the tax exempt business, upon determination by the Board that such person, firm, or corporation is otherwise qualified to receive such benefits and provided the industrial or business activity with respect to which the certificate was granted, is continued by the said person, firm or corporation. Thereafter, the transferor of the certificate shall lose all tax exemption and subsidy benefits under this subtitle and shall be subject to the operation of the tax laws of the Virgin Islands.—Added Nov. 3, 1961, No. 798, § 2, Sess. L. 1961, p. 260; March 26, 1963, No. 990, § 1, Sess. L. 1963, p. 217.

4001(b) (1962); Virgo Corp. v. Paiewonsky, 6 V.I. 256, 286–87 (3rd Cir. 1967); Vitex Mfg. Co., Ltd. v. Government of the Virgin Islands, 5 V.I. 429, 435 (3rd Cir. 1964); Pentheny, Ltd. v. Government of the Virgin Islands, 5 V.I. 575, 585 (3rd Cir. 1964). Relying heavily on the contractual nature of Delaware's grant, Antilles proposes that the tax exemption certificate, like any contract right, should be fully assignable.

In its brief, the Government has raised two objectives to Delaware's attempted assignment of the benefits received under its certificate—

(1) the respectable authority in this jurisdiction which has deemed tax exemptions under the Industrial Incentive Act to be matters of legislative grace and thus to be strictly construed against the taxpayer [see Tracy Leigh Development Corp. v. Government of the Virgin Islands, 501 F.2d 439, 443 (3d Cir. 1974); King Christian Enterprises, Inc. v. Government of the Virgin Islands, 345 F.2d 633, 637 (3d Cir. 1965)];

(2) the prohibition, found in Section 160(3)(a) of the Restatement of Contracts, against assigning contracts in which performance by the assignee would vary materially from that of the assignor.

A

■■ In response to the Government's first assertion, I find the doctrine of strictissimus juris inapplicable to the instant case.[2] Preliminarily, it is helpful to put the rule in its proper perspective. Far from compelling immediate surrender to its dictates whenever an ambiguity arises, the rule of strict construction should be employed as an element

---

[2] The precedential impact of these authorities is somewhat neutralized by the decisions which have held that because the Government has declared the grants to be in the nature of a contract, any ambiguity in the statute must be construed against its draftsman, the Government. See Vitex Mfg. Co., Ltd. v. Government of the Virgin Islands, supra at 435; Tumex Corp. v. Government of the Virgin Islands, Civ. No. 160/70, at 4 (D.V.I. 1970).

of decision only when the court has exhausted its experience by attempting other tests of meaning. It is, therefore, not a substitute for all other rules. Citizens' Bank v. Parker, 192 U.S. 73, 85–86 (1904).

Unlike the Tracy Leigh and King Christian cases in which the Third Circuit employed the rule, this Court is not presented with solely a problem of statutory construction but rather is aided by both substantive law and legislative purpose. The general law of assignments, for example, states that in the absence of language prohibiting assignment, claims the Government are freely assignable. Webster v. Luther, 163 U.S. 331, 341 (1896). In People ex rel. Stone v. Nudelman, 34 N.E.2d 851 (Ill. 1941), the Supreme Court of Illinois confronted the rule requiring strict construction of a tax refunding statute in the context of an assignment of a credit memorandum. The credit memorandum, issued by the Department of Finance for the erroneous payment of a retailers' occupation tax, was transferred by the grantee-company to an assignee for the benefit of creditors. Noting that the refunding statute on which the issuance of the credit memorandum was based was silent on the issue of transferability, the Court declined to apply the doctrine of strict construction, in favor of the rule upholding the free assignability of claims against the Government. Id. at 853. The foregoing decision is entirely consistent with the weight of authority which provides that in the absence of an express statutory prohibition against assignment, the assignability of a claim for tax refund should be sustained. See Crawford County Trust & Savings Bank v. Crawford County, 66 F.2d 971, 972–73 (8th Cir. 1933); 51 Am. Jur. (Taxation) § 1182, at 1015; Annot., 134 A.L.R. 1202.

■ An additional, even more compelling, reason for not invoking the technical rule of construction is that to do so would vitiate the important policies underlying Act No.

343

224. For, the rule is not to be applied where the real intent of the statute can be gathered from the Act itself. See State v. Taylor, 80 So.2d 618, 621 (Ala. 1955); Chicago Home v. Carr, 133 N.E. 344 (Ill. 1921). As expressed in the Preamble and Declaration of Policy of Act No. 224, the purpose of the statute is to promote the local economy and to provide steady employment to the people of the Virgin Islands by aiding and encouraging new and existing business enterprises. It is difficult to conceive in what way the economy of the Islands would be harmed by permitting a marginally successful or defunct enterprise like Delaware to transfer its tax exemptions and subsidies to Antilles, a profitable business which would not only preserve the jobs created by its predecessor company but also maintain a high level of investment and capital input. Cf. Tumex v. Government of the Virgin Islands, Civ. No. 160/60, at 3 (D.V.I. 1970). To irretrievably tie up a valuable tax exemption certificate in a corporation that has ceased operating with almost eight years remaining on its grant can only be termed counterproductive from an economic standpoint.

Responding to an inquiry made by the Tax Exemption Board regarding the transferability of tax exemption certificates issued pursuant to Act No. 224, the Attorney General of the Virgin Islands suggested that the Legislature did not intend to prohibit assignment. Analyzing the policies of the Act from the standpoint of a potential investor, he noted that:

"[i]f . . . an investor could look forward to the loss of the special rights upon the sale of the business, he would be far less willing to invest his money here. So, likewise, would be a future investor by way of a purchaser of an existing business. Upon purchase, he would lose the benefits of the original owner." 4 V.I. Op. Atty. Gen. 29, Op. No. 1960–17 (Apr. 28, 1960).

In a recent appeal from this Court, the Third Circuit emphasized the importance of the reasonable expectations of

applicants under the Industrial Incentive Act seeking to establish new businesses in these Islands. Noting that the Legislature deemed the tax exemption grant to be a contract to assure companies that their rights thereunder were vested and thus did not rest on gossamer notions of legislative whim, the Court held that:

"to deny taxpayers who were induced to establish new businesses in the Virgin Islands the benefits they reasonably anticipated receiving would do immeasurable harm to the economy of the territory and render uncertain indeed its prospects of attracting any additional investment".

HMW Indus., Inc. v. Wheatley, 10 V.I. 313 (3d Cir. 1974), citing this Court's opinion in 368 F.Supp. 915, 919–20 (D.V.I. 1973); see also Vitex Mfg. Co., Ltd. v. Government of the Virgin Islands, supra at 434–35 n. 4.

Given the unequivocal declaration of the Legislature that the arrangement between Delaware and the Government was contractual, plus the lack of statutory prohibition against assignment, Delaware could reasonably expect that the validity of any subsequent transfer of its grant would be governed by the law of contracts. Despite its dormancy, Delaware maintained its status as a Virgin Islands corporation and continued to pay franchise taxes and file annual reports. It then entered into an arms length transaction with Antilles to transfer the certificate, and both parties gave notice to the Government of the proposed transfer. The foregoing action by Delaware was entirely consistent with its reasonable expectation that its tax certificate was a valuable and transferable asset. In addition, the letter dated February 15, 1965, in which the Acting Attorney General advised Antilles that the proposed assignment appeared to be statutorily sanctioned, added further fuel to Delaware's expectations.

345

## B

I now turn to the Government's claim that Restatement of Contracts, Section 160(3)(a) prohibits the transfer of Delaware's grant. Section 160(a)(3) provides in pertinent part:

"Performance . . . by a person delegated has the same legal effect as performance . . . by the person named in the contract, unless . . . performance by the person delegated varies or would vary materially from performance by the person named in the contract as the one to perform . . .".

The validity of an assignment, then, depends on whether it makes a substantial difference to the Government whether its performance is to be rendered by Delaware or Antilles. See Simpson, Contracts § 127, at 267 (1954).

The Government argues that in return for the generous subsidies and exemptions afforded by the Act, the taxpayer must respond with corresponding duties; that is, the taxpayer's industry or business must promote the public interest by furthering the economic development of the territory. Since the extent to which one enterprise's activities benefit the economy, the argument continues, will normally differ substantially from that of another business, the contract is personal and thus non-assignable. For the reasons stated herein, I must disagree with the foregoing analysis.

A thorough reading of Act No. 224 convinces me that the considerations involved in the Government's granting or denying exemptions and subsidies under the statute are fundamentally objective in nature.[3]

---

[3] The Act requires only (1) that a business seeking exemptions and subsidies thereunder have "an actual and demonstrable capital investment of at least Ten Thousand ($10,000.00) Dollars," (2) that the product in which the business deals not have been manufactured, processed, created or produced within the Virgin Islands prior to January 1, 1947, (3) that "[n]ot less than seventy-five (75%) per cent of all persons employed in any new industry . . . be legal residents of the Virgin Islands," and finally (4) that to be eligible a person has to be a registered voter and domiciled in the Virgin Islands, while a corporation has to be organized under the laws of the Virgin Islands.

This view is buttressed by a comparison of Act No. 224 with its successor, Act No. 798. Outlining the criteria required of applicants under 798, Section 4041 of Title 33 of the V.I. Code reads:

"A person, firm, or corporation, engaged in or about to engage in an industrial or business activity in the Virgin Islands, *which industrial or business activity, in the judgment of the Governor of the Virgin Islands will promote the public interest by economic development of the Virgin Islands,* may apply for the same . . .". (Emphasis added).

The provision, which essentially grants to the Governor authority to weigh subjective factors in determining whether a business should be granted exemptions [see Virgo Corp. v. Paiewonsky, supra at 288–89], is important for purposes of the instant case only insofar as it is absent from its predecessor statute. By adding subjective factors to the 1961 amendments, which the Legislature could have included in the 1957 Act, it is strong evidence that the Legislature intended no such interpretation of the prior law. Vitex Mfg. Co., Ltd. v. Government of the Virgin Islands, supra at 436.

In the Vitex decision, the Third Circuit expressed "strong disapproval" of a Board meeting in which "the Governor's views on the role of Vitex in the economy of the Islands and the mainland" was discussed in the context of a certificate issued under Act No. 224. The Court urged that

"the statute from which [the Board] derives its authority to act prescribes the standards to be applied by it in the conduct of its functions, which may not be disregarded merely because the Governor believes that other considerations should enter into its deliberations and recommendations."

Id. at 436–37. Cf. 3 V.I. Op. Atty. Gen. 94, Op. No. 1954–57 (Nov. 24, 1957); 2 V.I. Op. Atty. Gen. 128, Op. No. 1951–16 (Feb. 23, 1951).

■ In light of the objective nature of the criteria under Act No. 224, the Board's revocatory powers, as set forth in Section 9(a)(3) of the statute, ensure that performance by Antilles will not, and indeed cannot, vary materially from performance by Delaware. For, any failure to comply with either the stated provisions of the Act or the rules and regulations issued in accordance therewith would subject the assignee to the loss of the certificate. Consequently, the Restatement of Contracts does not prohibit the transferability of grants issued pursuant to the 1957 Act.[4]

■ Consistent with the general law of assignments which I have held applicable to the case before me, I find that the transfer of the certificate became effective immediately upon final acquisition by Antilles of all of Delaware's assets on April 6, 1965. Also in accordance with contractural principles of assignment, said transfer was valid without Board approval, thereby rendering unnecessary Antilles' applications for transfer on March 26, 1965 and September 27, 1968. On the date of effective transfer, Antilles became subject to revocatory powers of the Board; and although the record fails to disclose whether Antilles complied with the provisions of the Act from that date, I find that the onus was on the Government, via its powers of revocation, to initiate sanctions for failure to comply therewith. Inasmuch as the Board did not initiate revocation proceedings until April 28, 1969—more than four years after the transfer—the Government clearly neglected its above stated duty. Furthermore, since Antilles was not required under Act No. 224 to apply for the transfer, it cannot be faulted for either the subsequent withdrawal of its application or the three-year lapse prior to the renewal thereof.

---

[4] Some courts have recognized that even personal service contracts, traditionally the quintessential example of non-assignability under the common law, are assignable when no change in the employee's rights and duties are entailed. See, e.g., Haldor, Inc. v. Beebe, 164 P.2d 568, 572 (Cal. App. 1945).

## III

### ADMINISTRATIVE IRREGULARITIES

■ From the foregoing, it is clear that the Board's determination that Antilles lacked standing to respond to the order to show cause why Delaware's certificate should not be revoked was erroneous. As a consequence, the Government violated the clear procedural mandate of Section 14 of the 1957 Act, which provides that "[n]o tax or fee exemption or subsidy granted herein shall be revoked, modified, or rescinded without notice and hearing . . .".

■ I now turn to plaintiff Antilles' allegation that the Board's action in denying its application for transfer was "arbitrary" as having no statutory basis therefor. See Act No. 224, § 9(b). Administrative action is deemed arbitrary.

"if it is taken without any authority of law or upon a misconstruction of the statutory authority under which it purports to be taken. . ." (citations omitted).

In re Hooper's Estate, supra at 528 n. 7. See also United States v. Cormack, 329 U.S. 230, 243–44 n. 14 (1946); 2 Am.Jur.2d (Admin. Law) §§ 620, 651.

■ Although the letter dated October 27, 1970, from Governor Evans to Antilles, in which the latter was formally notified of the rejection of its application for transfer, fails to state any reason therefor,[5] a prior letter from the Executive Director of the Board to Lt. Governor Maas is somewhat more informative:

"This is to advise that the Industrial Incentive Board at Executive Session after careful consideration of the subject application found applicant (Antilles Industries, Inc.) ineligible to be the recipi-

---

[5] The Third Circuit has recognized that the exercise of the right of judicial review of administrative determinations is rendered practically impossible, or at least more difficult, when the agency's decision is not accompanied by express findings. See Morton v. Delta Mining, Ind., 495 F.2d 38, 42 (3d Cir. 1974).

ent of the requested transfer, and that *there is no active or outstanding business operation and grant on which to predicate a transfer* notwithstanding, eligibility of applicant."

Letter from G. Beretta, Dir. of Indus. Incentive Bd., to D. Maas, Government Secretary of Virgin Islands (July 22, 1970) (emphasis added). The minutes of the Board's closed executive meeting of November 4, 1969 further indicate that although other potential justifications for the denial of the transfer were discussed,[6] the Board's decision ultimately crystallized around the lack of a viable certificate to be transferred. Exec. Sess., V.I. Indus. Incentive Bd., Record at 19 (Nov. 4, 1969). Since it is uncontroverted that Delaware's certificate was never formally revoked, the Board is necessarily suggesting, albeit indirectly, that Delaware's dormancy constituted a revocation of its certificate as a matter of law. See Record, supra at 4–5. This argument was explicitly rejected by Judge Christian in Tumex Corp. v. Government of the Virgin Islands, Civ. No. 160/70 (D.V.I. 1970). Tumex, a processor of tungsten ore who was granted a tax exemption certification in 1964, closed operations and sold its plant in early 1966 due to financial difficulties. In upholding Tumex's claim for a refund of income and excise taxes paid for the year 1966, the Court found no authority either in language of the statute or in the legislative intent to support the Government's assertion that Tumex, by terminating its operations, had violated the statutory conditions of its grant and thereby forfeited any rights or benefits due to it under the Act.

Section 9(a)(3) of Act No. 224 provides for revocation of a tax or fee exemption for "failure of a person, firm or corporation to which such exemption or subsidy was

---

[6] From the record, the Board appears to have considered two other reasons for denying Antilles' application for a transfer—(1) that Antilles did not in fact "need" the tax exemptions and subsidy benefits [see Record, supra at 17]; and (2) the Governor had made a philosophical decision to limit the number of watch companies receiving said benefits [see Record, supra at 6, 15].

granted to comply with the provisions of this Act and the rules and regulations issued in accordance therewith". No provision within Act No. 224 has been cited by the Government which would lend support, either directly or indirectly, to the Board's theory of automatic revocation by inactivity. Inasmuch as the Industrial Incentive Board of the Virgin Islands is an administrative agency and thus "a tribunal of limited jurisdiction" [Pentheny, Ltd. v. Government of the Virgin Islands, supra at 582], its authority to act is narrowly circumscribed by the statute reposing power in it. Id. See also Vitex Mfg. Co. v. Government of the Virgin Islands, supra at 435. It follows that the Board's action was without authority of law and, therefore, arbitrary.

### JUDGMENT

In accordance with the foregoing Memorandum Opinion and the reasons set forth therein, it is hereby ORDERED, ADJUDGED and DECREED:

(1) That Antilles Industries, Inc. be deemed the lawful assignee of Delaware Watch Company's "Certificate for Tax or Fee Exemptions and Subsidies" granted to Delaware by defendant Government of the Virgin Islands on December 7, 1961.

(2) That said assignment be deemed effective on April 6, 1965, and that the benefits arising thereunder inure to plaintiff Antilles until December 16, 1970, the date of expiration of the certificate.

(3) That, following the submission by plaintiff Antilles to this Court of adequate documentary proof of payment thereof, defendant Government of the Virgin Islands refund to Antilles the following taxes accruing between the dates April 6, 1965 and December 16, 1970:

(a) one hundred percent (100%) of all excise taxes paid by Antilles but which should have been exempted;

(b) one hundred percent (100%) of all gross receipts taxes paid by Antilles but which should have been exempted;

(c) ninety percent (90%) of all import duties;

(4) That, upon submission of adequate documentary proof of Antilles' income tax liabilities for the period in question, defendant shall grant to Antilles a subsidy equal to seventy-five per centum (75%) of such liabilities actually paid or which shall be paid by Antilles and shall, if shareholders of Antilles qualify, grant the statutory subsidy to those qualifying shareholders in accordance with the provisions of Act No. 224, if any dividend income was received by said shareholders.