IN THE MATTER OF THE ESTATE OF
VAN B. HOOPER, DECEASED
THE GOVERNMENT OF THE VIRGIN ISLANDS, Appellant

No. 15,549

United States Court of Appeals

Third Circuit

Argued February 3, 1966

Decided April 22, 1966

*See, also, 359 F.2d 569*

ALMERIC L. CHRISTIAN, United States Attorney, Charlotte Amalie, St. Thomas (JOHN E. STOUT, Assistant United States Attorney, on the brief), *for appellant*

WARREN H. YOUNG, Christiansted, St. Croix, Virgin Islands (YOUNG, ISHERWOOD & MARSH, Christiansted, St. Croix, Virgin Islands, MCDERMOTT, WILL & EMERY, Chicago, Illinois, on the brief), *for appellee*

Before KALODNER, *Chief Judge*, and MARIS and ALDRICH,\* *Circuit Judges*

MARIS, *Circuit Judge*

### OPINION OF THE COURT

The Government of the Virgin Islands appeals from a judgment entered in the District Court of the Virgin Islands dismissing a claim filed by the Government against the Estate of Van B. Hooper, deceased, for reimbursement of $1,003,932.80, the amount of subsidies allegedly erroneously paid to the decedent for the tax years 1951 through 1960 under the industrial incentive program of the former Municipality of St. Croix, later of the Territory of the Virgin Islands.[1] The Government contends that dismissal of the claim by the District Court was erroneous because, as it asserts, the evidence conclusively shows that the grant of tax exemption and industrial subsidy payments to Hooper was an arbitrary action on the part of both the Tax Exemption Board and the Governor and was induced by fraud.

---

\* By designation.

[1] On January 10, 1955 the functions of the Municipality of St. Croix were transferred to the Government of the Virgin Islands, Revised Organic Act of 1954, § 10, 48 U.S.C.A. § 1576. In 1957 the provisions of the industrial incentive program of St. Croix were codified into 33 V.I.C. §§ 4001 et seq. (1957 ed.) which provided an industrial incentive program for the entire Territory of the Virgin Islands. However, before the Code went into effect the Legislature enacted the Act of July 5, 1957, No. 224, V.I.Sess.L. 1957 p. 146 et seq., 33 V.I.C. §§ 4001 et seq. (1958 Supp.) which superseded the original provisions of the Virgin Islands Code on the subject.

The evidence, which was undisputed, discloses the following facts:

Some time prior to 1951 the decedent, Van B. Hooper, had organized a publishing company in Milwaukee, Wisconsin, Ideals Publishing Company, of which he was president and principal stockholder. Among other publications of the Company was a magazine called "Ideals" which Hooper had conceived and created and which apparently had a wide circulation. On January 16, 1951 Hooper entered into an agreement with his company to retire from active management thereof but "to render and give all required advice, and any and all creative services required by the Company in connection with preparing the publication of its various books and magazines, and to do any and all creative services required by the Company in connection with preparing the publication of its various books and magazines, and to do any and all research work including photography deemed by said Van B. Hooper as proper and incident thereto, and to make available to the said Company any or all of his present reference library and any additions thereto, resulting from his research subsequent to the date hereof." In addition he agreed to "direct to the extent required by said Company all research and editorial work, to the end that the publications of said Company will maintain their present standard, and improve as a result of the research and editorial service of said Van B. Hooper." He was not to be paid any further salary but rather to receive a royalty of 15 cents a copy for each copy of Ideals sold and 5 cents a copy for each of the other publications of the Company which were sold.

On March 20, 1951 Hooper applied to the Tax Exemption Board of the former Municipality of St. Croix for tax exemption and industrial subsidy under the Ordinance of the Municipal Council of St. Croix approved June 25, 1949, Bill No. 35, which was available in St. Croix to a person,

firm or corporation qualifying as a new industry. In his application he described the type of business in which he proposed to engage as "Primarily creative editorial, advertising, tourist promotion and merchandising counsel. This will include the editing, supervising and creating of books, magazines, sales promotion and tourist promotion data." The amount of demonstrable capital invested was stated to be in excess of $10,000.00.[2]

The Tax Exemption Board, which had been appointed under Section 5(a) of the Ordinance and was authorized to investigate all applications for tax or fee exemptions and for the granting of subsidies and to recommend to the Governor whether such applications should be approved or disapproved,[3] on July 10, 1951 recommended to the then acting Governor that Hooper's application be tentatively approved, conditioned, however, upon his transferring his "demonstrable capital investment" from the United States to St. Croix and, subject to that condition, the application was approved by the acting Governor.

On January 7, 1952 the Ordinance of June 25, 1949, Bill No. 35, was repealed and superseded by an Ordinance of the Municipal Council of St. Croix approved January 7, 1952, Bill No. 39. On March 10, 1952 Hooper received a grant of tax exemptions and industrial subsidies under the Ordinance of 1952, Bill No. 39, retroactive to March 5, 1951, for a period of eight years (later extended to ten

---

[2]

| "ITEMS | ESTIMATED AMT. |
| --- | --- |
| Office and Library Furniture & Eqpt. | $ 2,060.00 |
| Remodeling, Painting & Air Conditioning | 1,050.00 |
| Reference Library to be Purchased | 7,500.00 |
| Photographic Equipment | 975.00 |
| Automobile | 2,250.00 |
| Working Capital | 5,000.00 |
| Estimated total | $19,375.00" |

[3] In 1957 these functions were transferred to the Virgin Islands Board of Tax Review, which for the purpose of administering the provisions of the program, constituted the Tax Exemption Board to which applications for tax exemptions and subsidies were made. See 33 V.I.C. § 4102(a) (1957 ed.); 33 V.I.C. § 4109 (1958 Supp.); 33 V.I.C. § 4101(a) (1965 Supp.).

years) "covering the editing, supervising and creating of books, magazines, sales promotion and tourist promotion data", conditioned upon continued compliance with the Ordinance. Under this grant he received exemptions from certain taxes and was paid industrial subsidies for ten years in an amount equal to 75% of the income tax which he paid into the treasury of the Municipality and later into the treasury of the Territory. No subsidy payments were made to Hooper until 1958 and 1959 when he was paid $659,064.08 for the tax years 1951 through 1958. Later he was paid $154,604.28 for the tax year 1959 and $190,264.44 for the tax year 1960, a total in all of $1,003,932.80.

Hooper's operation in the Virgin Islands consisted of assorting, selecting, and laying out art work and literary matter which eventually appeared in the magazine "Ideals" and other publications of Ideals Publishing Company. The contents of the magazine consisted principally of previously published poetry and illustrations carefully selected for each issue in keeping with the central theme which had been chosen for the issue. Members of the Company's staff in the Milwaukee office of the Company would go through volumes of poetry with a view to selecting poems relating to the theme. The poems so selected would be checked by other members of the Company's staff in Milwaukee before being sent to Hooper in St. Croix for his final selection and layout. Similar procedure would take place in Milwaukee with respect to prospective illustrations and art work. Then after Hooper had selected and laid out the contents of an issue, in some instances using designs or photographs of his own, he would send the format to the Company in Milwaukee where the printing and publication would take place and from whence the magazine was distributed.

On July 23, 1959 the Government Comptroller of the Virgin Islands filed an audit report taking exception to two payments of subsidy to Hooper based on income tax

returns for the years 1951 and 1957. In both cases the exceptions were made on the ground that the payments represented subsidy on income tax paid on non-qualifying interest and dividend income.[4] It further appears that the exception in respect to the tax year 1957 was administratively settled but the question remained open in respect to the 1951 tax return. A reaudit by the Comptroller was requested. On February 20, 1961 the Comptroller filed a report on the audit which he had conducted of all the transactions involving the granting of the tax exemptions and industrial subsidies to Hooper. The Comptroller was of the opinion that Hooper's business did "not even, technically, qualify as a Virgin Islands business in itself" nor did it "by any stretch of the imagination come within the definition of 'new industry' within the purview of the intent and purposes contemplated by the Industrial Incentive Act of the Virgin Islands." He took an exception to the industrial subsidy payments to Hooper in the amount of $659,064.08 for the tax years 1951 through 1958, and recommended that the Board of Tax Review (Tax Exemption Board) consider the entire matter for the purpose of revoking the grant and requiring Hooper to return to the Government the amount of subsidy payments made to him, together with taxes and fees from which he had been exempted from payment. On December 29, 1961 the Board reviewed the matter and adopted the opinion of the Attor-

---

[4] The Government Comptroller was acting under the authority of Section 17(c) of the Revised Organic Act of 1954, 48 U.S.C.A. § 1599(c), under which it is his duty "to bring to the attention of the proper administrative officer failures to collect amounts due the government, and expenditures of funds or property which in his opinion are extravagant, excessive, unnecessary, or irregular."

[5] The Board was authorized to recommend to the Governor, after notice and hearing, the revocation of any tax or fee exemption or denial of any subsidy for the unexpired portion of the period for which subsidy was granted in the event of failure of the grantee to comply with the provisions of the Act and the rules and regulations issued thereunder. St. Croix Ordinance of 1952, Bill No. 39, § 5(a)(3); 33 V.I.C. § 4102(a)(3) (1957 ed.); Act of July 5, 1957, No. 224, § 9(a)(3), V.I. Sess. L. 1957, p. 153; 33 V.I.C. § 4109(a)(3) (1958 ed.).

ney General who had expressed the view that there was no merit in any of the Comptroller's objections and that "Determination as to Mr. Van Hooper's eligibility as a 'new business or industry' was within the competence of the Tax Exemption Board and its judgment in this respect may not be reversed in the absence of a conclusive showing of arbitrariness or fraud." Subsidy payments were then authorized to be made to Hooper for the remaining tax years 1959 and 1960.

Hooper died on February 27, 1963 and letters testamentary were granted to the Marine National Exchange Bank of Milwaukee, the executor named under the will. The Comptroller on January 22, 1964 filed a supplementary audit report on the grant of the tax exemption and subsidies to Hooper and adhered to his earlier recommendation that action be taken to recover the amounts erroneously paid as subsidies. Accordingly, the Government filed a claim against the estate seeking recovery of $1,003,932.80, the amount allegedly erroneously paid to Hooper, which the executor refused to allow. The Government, pursuant to 15 V.I.C. § 395, then presented its claim against the estate to the district court for allowance.

After holding a hearing and considering the evidence, which was largely documentary, the district court filed findings of fact and concluded, as a matter of law, that the application for tax exemption and subsidies by Hooper had been made in good faith and without misrepresentation or fraud; that the recommendation by the Board to the Governor that the application be approved, conditioned upon the relocation of the invested capital to St. Croix, was not arbitrary or induced by fraud and was "deemed final" and that the grant of subsidies to Hooper was in the nature of a binding contract between the Government and Hooper which "may not be revoked, cancelled or rescinded". On the basis of these findings, a judgment was entered dis-

missing the Government's claim. This appeal by the Government of the Virgin Islands followed.

The Government contends that the Board, when it considered Hooper's application and recommended its approval, had acted arbitrarily in that certain procedures laid down by the Ordinances of 1949 and 1952 were not complied with. In this regard we observe that the Government is treating these proceedings as though it were appealing from an administrative order, in which event irregularities in procedure might be corrected upon review. However, in this case the time for review of errors or irregularities which do not go to the jurisdiction of the Board has long since passed. 1921 Code of St. Croix, title III, ch. 52, §§ 2, 4; 5 V.I.C. §§ 1421, 1422. See Lynch v. De Bernal, 1870, 76 U.S. (9 Wall.) 315; 2 Am. Jur. 2d Administrative Law §§ 493–495. Accordingly, these questions are not before us for consideration.

The Executor points out, and rightly so, that this action was brought to rescind a contract[6] on the ground of fraud or arbitrary conduct in its inception. It was upon this basis that the Government sought reimbursement of the industrial subsidy payments allegedly erroneously made to the decedent. We may say at the outset that we see no merit in the Government's contention that the Tax Exemption Board's recommendation was procured by such fraud and deceit as to vitiate the proceedings conducted by the Board. It would serve no useful purpose to discuss the grounds upon which the Government relies in support of its allegation of fraud. Suffice it to say that our review of the record convinces us that the district court did not err in concluding that Hooper's application was made without misrepresentation or fraud and that the recommendation

---

[6] Grants of industrial subsidies and tax exemptions were in the nature of a contract or agreement between the Government and the new industry or business receiving benefits under the industrial incentive program. St. Croix Ordinance of 1952, Bill No. 39, § 1(a); 33 V.I.C. § 4002 (1957 ed.).

of approval by the Board to the then acting Governor was not induced by fraud.

■ We come then to the other ground relied upon by the Government, namely, that the Board was arbitrary, in the sense that it acted wholly contrary to law,[7] in recommending approval of Hooper's application for subsidy for an allegedly new business which was to involve merely his doing editorial work for his magazine published in Milwaukee. Accordingly, we turn to the pertinent provisions of the St. Croix Ordinance of January 7, 1952, Bill No. 39, to determine whether, fairly construed, they can be read to authorize the grant of subsidy to one engaged in such a business as that.

■ The statutory purpose of the industrial incentive program was stated in Section 1 of the Ordinance to be "to attract new capital to the Municipality of St. Croix and to encourage the establishment of new industries and other business enterprises, and to promote and stabilize the economy". "To achieve this objective," it was further stated in Section 1 of the Ordinance that "exemptions from payment of certain taxes or fees and the granting of special industrial subsidies shall be allowed to new business enterprises as hereinafter provided." To qualify under the Ordinance, the applicant was required to come within the terms of Section 2 which provided as follows:

"For the purpose of this enactment, a person, firm or corporation shall be deemed to be engaged in a new business or industry if duly qualified to do any business in the Municipality of St. Croix involving the manufacture, processing, creation or production of any articles or commodities or carrying on any business which were not being manufactured, processed, created, produced or carried on within the said Municipality during the year 1947, and in which

---

[7] Administrative action is arbitrary if it is taken without any authority of law or upon a misconstruction of the statutory authority under which it purports to be taken. Wood v. Waggoner, 1940, 67 S.D. 365, 293 N.W. 188, 189; Montgomery County v. Merlands Club, 1953, 202 Md. 279, 96 A.2d 261, 267; Ross v. Wilson, 1955, 308 N.Y. 605, 127 N.E.2d 697, 704; 2 Am. Jur. 2d, Administrative Law, §§ 620, 651.

business at the time of granting tax or fee exemption or granting of subsidy as hereinafter provided there is a demonstrable capital investment of at least ten thousand dollars ($10,000). For the purposes of this Ordinance, an article or commodity shall be deemed as having been manufactured, processed, created, or produced within the Municipality during the year 1947 only if it was manufactured, processed, created or produced by an enterprise having in said year a demonstrable capital investment of at least ten thousand dollars ($10,000)."

Under section 3 it was provided that the applicant would be granted exemption from the payment of taxes or fees and would be "eligible for industrial subsidies" in amounts, inter alia, equal to 75% of the applicant's income tax paid into the treasury of the Municipality upon satisfactory proof that the applicant was "engaged in a new business or industry" as defined in section 2. It will be observed that the subsidies were described in the Ordinance as "industrial" in character. In this connection we note that the term "industrial" has been defined to mean "of or pertaining to industry or labor; denoting the processes or products of manufacture or commercial production in general". In re Ginsburg, 3 Cir. 1958, 255 F.2d 358, 362. We note also that subsidy programs have been adopted in the past by both the Federal Government and various States for specific purposes: e.g., to stabilize the economy, Heinz v. Bowles, Em.App. 1944, 149 F.2d 277; to encourage increased production, Kiles v. Linnane, 1945, 117 Mont. 59, 156 P.2d 183; and to administer a health program, County of Los Angeles v. State Dept. of Pub. Health, 1958, 158 Cal. App.2d 425, 322 P.2d 968. Generally speaking, a subsidy is a grant of public funds or property by a government to a private person to assist in the establishment or support of an enterprise deemed advantageous to the public. 83 C.J.S. p. 760. Such grants are not intended as mere gratuities or bounties, however, but are necessarily closely articulated with the purposes of the program. See Illinois Packing Co. v. Snyder,

Em.App. 1945, 151 F.2d 337, 339. With these principles in mind, we turn to consider the facts of this case.

It is quite obvious that Hooper did not propose to engage in any business in St. Croix which would involve the manufacture, processing, creation or production of any articles or commodities, as defined in section 2 of the Ordinance. On the contrary, the services which he proposed to perform in St. Croix for his Company in Milwaukee were similar to those which he had rendered in Wisconsin before he entered into the agreement to retire from its active management and control. In that agreement, which had been signed before Hooper came to the Virgin Islands, the Company stated that it recognized "the need for the continued creative and directive ability" of Hooper and the "use of the material which he has accumulated over a period of years, and which has been and is now being used" by the publishing Company "in connection with its several publications" and that the Company had requested Hooper to "continue to render the services heretofore performed by him" and to "make available to it the material which he has previously acquired, and the additional material which he will acquire, which the Company recognizes will be of considerable value to it." The result of the agreement merely was that Hooper transferred his office equipment, library and photographic material from his office in Wisconsin to his office, and later to his home, in St. Croix, and thereafter performed in St. Croix services for his Company identical with some of the services which he had previously rendered to it in Wisconsin.

Moreover Hooper took the position that he was not operating a "business" in St. Croix in the sense of being engaged in a commercial enterprise, for he advised the Tax Exemption Board, in letters dated April 14, 1958, January 29, 1959 and March 8, 1960, that his income was derived only from the personal professional services which he

rendered. It was for this reason, he asserted, that he was unable to comply with the directions of the Board to file gross receipts and excise tax reports. In the letter of January 29, 1959, he pointed out that "my business is strictly a personal service, and I do not have occasion to purchase or process raw material as such—so I do not have occasion to prepare a balance sheet and inventory as would the average commercial type business."

 It is perfectly clear that Hooper intended to and did perform the work of editor of a magazine printed and published in Milwaukee. In so doing he was merely performing in St. Croix a service for his Company the business of which was conducted in Wisconsin. Such editing of a magazine by remote control might, perhaps, be considered the conduct of a business in the same sense that any officer of a corporation is engaged in the business of furnishing personal services and ideas to his corporation. But it was certainly not the conduct of a business within the meaning of the industrial incentive ordinance and statutes. Hooper did not create a product in the sense of a commercial commodity saleable in the Virgin Islands market. Certainly the format of a magazine prepared by its editor and sent to the publisher on the mainland for the use of its printing force was not such a product. Moreover, it is obvious that Hooper's activities did not advance the economic development of the Territory, which was the basic purpose of the industrial incentive program.[8] For it appears that his entire payroll during the period of exemption consisted of salary and bonuses paid to his daughter and small sums paid to cleaning women. We conclude that the enterprise in which Hooper proposed to engage and in which he did engage during the tax years 1951 to 1960, inclusive, cannot fairly be held to be a "new business or

---

[8] Dorem Corporation v. Government of the Virgin Islands, 3 Cir. 1966, 5 V.I. 503, 358 F.2d 693.

industry" within the terms of section 2 of the St. Croix Ordinance of 1952, Bill No. 39. It necessarily follows that the Tax Exemption Board in recommending, and the Governor in approving, the grant of tax exemptions and industrial subsidies to Hooper acted arbitrarily in the sense that they exceeded the authority conferred upon them by the Ordinance.

We conclude, also, that the Board on December 29, 1961, when it reviewed the grant of tax exemptions and industrial subsidies to Hooper, was arbitrary in deciding that Hooper continued to qualify as a beneficiary under the industrial incentive program. It will be noted that the original grant to Hooper on March 10, 1952 was "conditioned upon continuing compliance by the grantee with the provisions of Bill No. 39, sanctioned and approved January 7, 1952". This was in conformity with the Ordinance, section 5(a)(3) of which required that the Board recommend to the Governor, after notice and hearing, the revocation of any tax or fee exemption or denial of any subsidy for the unexpired portion of the period upon failure of the beneficiary to comply with the provisions of the Ordinance and the rules and regulations issued thereunder. This provision was continued in effect upon codification of the Ordinance into 33 V.I.C. § 4102(a)(3) (1957 ed.), and in subsequent statutes relating to the industrial incentive program. See Vitex Manufacturing Co. v. Government of Virgin Islands, 3 Cir. 1965, 5 V.I. 429, 351 F.2d 313.

■■ The continued receipt of industrial subsidy was predicated upon compliance by the beneficiary with the provisions of the law and the rules and regulations promulgated thereunder and was designed to prevent the diversion of public funds from the accomplishment of the object for which they were intended. See Earl C. Gibbs v. Defense Supplies Corporation, Em.App. 1945, 155 F.2d 525; Armour & Co. v. Reconstruction Finance Corporation,

Em.App. 1947, 162 F.2d 918, 922. By 1961 the Board had been alerted by Hooper, in his letters to which we have referred above, that his enterprise was not "commercial" in nature, that his services were purely personal and professional and that for this reason he could not comply with the directions of the Board to file certain reports. It was the duty of the Board at that time to consider Hooper's eligibility for continued subsidy payments in the light of the circumstances then existing and it was not bound by earlier findings of the prior Board that Hooper had qualified for tax exemption and industrial subsidies when he had applied in March 1951.

 The Executor contends that the grant, being in the nature of a contract between the Government and Hooper, may not be revoked, cancelled or rescinded. It is true that the Ordinance provided that such a grant was to be a contract. But the Ordinance obviously referred in this regard only to grants made to those applicants whose businesses or industries came within the terms of the Ordinance. If, as here, an alleged business did not comply with the terms of the Ordinance no binding contract arose even though the Board and the Governor, acting beyond their authority, purported to grant the subsidies requested. It is well settled that contracts with agents of the Government must be in strict conformity with the authority conferred. Reese v. Government of the Virgin Islands, 3 Cir. 1960, 4 V.I. 177, 184, 277 F.2d 329, 332–333; Wildermuth v. United States, 7 Cir. 1952, 195 F.2d 18, 24. The Government is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit. Utah Power & L. Co. v. United States, 1917, 243 U.S. 389, 409, 61 L.ed. 791, 818; United States v. San Francisco, 1940, 310 U.S. 16, 32, 84 L.ed. 1050,

1061; Spencer v. Railroad Retirement Board, 3 Cir. 1948, 166 F.2d 342; Annotation 1 ALR2d 338.

What was said by the Supreme Court in Federal Crop Ins. Corp. v. Merrill, 1947, 332 U.S. 380, 384–386, is applicable here:

". . . Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority. See, e.g., Utah Power & L. Co. v. United States, 243 U.S. 389, 409, 61 L.ed. 791, 818, 37 S.Ct. 387; United States v. Stewart, 311 U.S. 60, 70, 85 L.ed. 40, 48, 61 S.Ct. 102, and see, generally, Floyd Acceptances (Pierce v. United States) 7 Wall (U.S.) 666, 19 L.ed. 169.

". . . The oft-quoted observation in Rock Island, A. & L. R. Co. v. United States, 254 U.S. 141, 143, 65 L.ed. 188, 189, 41 S.Ct. 55, that 'Men must turn square corners when they deal with the Government,' does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury.

. . .

". . . The circumstances of this case tempt one to read the regulation, since it is for us to read it, with charitable laxity. But not even the temptations of a hard case can elude the clear meaning of the regulation."

■ We conclude that the Tax Exemption Board and the Governor exceeded their powers under the Ordinance in making the subsidy grant to Hooper. Their action was arbitrary because it was not according to law. Having paid the subsidies under a mistake of law the Government is entitled to reimbursement from Hooper's Estate of the amounts erroneously paid to him, totalling $1,003,932.80. Wisconsin Central R. Co. v. United States, 1896, 164 U.S. 190; Aebli v. Board of Education, 1944, 62 Cal. App.2d

706, 145 P.2d 601, 611; State v. McCarty, 1955, 76 Idaho 153, 279 P.2d 879, 881. See, also, Restatement, Restitution § 46(a).

■■■■■■ The Executor argues that the Government's claim is barred under the general statute of limitations, 5 V.I.C. § 31. This contention is wholly without merit. In the absense of an express waiver of its immunity, the Government of the Virgin Islands is not bound by the general statute of limitations. The Territory of the Virgin Islands is a body politic. While not sovereign, in the true sense of that term, the Revised Organic Act has conferred upon it attributes of autonomy similar to those of a sovereign government or a state. Harris v. Municipality of St. Thomas and St. John, D.C.V.I. 1953, 2 V.I. 251, 111 F.Supp. 63, affirmed 3 Cir. 1954, 3 V.I. 502, 212 F.2d 323. Accordingly, the general principle that claims of the sovereign are not subject to the defenses of laches and the statute of limitations, is applicable to the Territory, unless expressly waived, and is implied in all its enactments. See Jackson County v. United States, 1939, 308 U.S. 343, 351. This immunity is based upon the public policy of protecting the citizens from damage to or loss of their public rights and property through the negligence of public officers. Guaranty Trust Co. of N.Y. v. United States, 1938, 304 U.S. 126, 132.

The order of the district court dismissing the claim of the Government will be reversed and the cause remanded with directions to allow the claim.