**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

v.

**BAY CORPORATION, Defendant**

Civil No. 74/29

District Court of the Virgin Islands

Div. of St. Thomas and St. John

July 20, 1976

ATTORNEY GENERAL OF THE VIRGIN ISLANDS (ATTY.
WILLIAM SILVER, of counsel), Dept. of Law, St. Thomas,
V.I., *for plaintiff*

GRUNERT, STOUT, HYMES & MAYER, ESQ. (ATTY. RICHARD
E. GRUNERT, of counsel), St. Thomas, V.I., *for defendant*

CHRISTIAN, *Chief Judge*

### MEMORANDUM OPINION

In this action, plaintiff Government of the Virgin Islands (hereafter the Government), seeks to have this Court declare invalid an Agreement of Lease, dated May 27, 1969

(hereafter, the Lease) between Virgin Islands Port Authority (hereafter, the Authority), and defendant Bay Corporation, the demised premises being that known as the "Gramboko School" and more particularly described as Parcel No. 7, former Submarine Base, as shown on P.W.D. drawing No. B9-250-T 69, St. Thomas, Virgin Islands (hereafter, Parcel No. 7).[1]

The Lease provided that Bay Corporation would lease Parcel No. 7 from the Port Authority for a term of thirty years at an annual rental of $8,000 for the first decade, $12,000 for the second decade, and $15,000 for the third. On September 15, 1970, Bay Corporation sublet Parcel No. 7 back to the Government at an annual rental of $72,000 with annual renewals through June 30, 1973. On August 31, 1973, these parties agreed to a new sublease for one year at $64,800 per annum. It was subsequently renewed for the period through June 30, 1975. On August 21, 1975, agreement was reached on yet another one year subletting at $72,000, to expire on June 30, 1976. It is clear that the Government is presently in the unfortunate position of having to pay Bay Corporation several thousand dollars per year for the use of property which the Government, through the Authority, effectively owns.

Basically, the Government argues that the Lease should be invalidated both because it was never approved by the Legislature in accordance with a then prevailing statutory requirement, and because it was never approved by the

---

[1] The history behind the Lease and of negotiations which took place concerning it between, inter alia, the United States Navy, the Department of the Interior, the Virgin Islands Corporation, the Virgin Islands Airport and Industrial Resources Agency, the Virgin Islands Government and Bay Corporation is extensive, and, since it has been set out at length (in somewhat partisan fashion by defendant Bay Corporation both in its Response to Plaintiff's Motion for Summary Judgment, pp. 2–10 and in its post-trial *Written Summation*, pp. 1–4), need not be repeated here.
The procedural history of the case is set forth in the Post-Trial Memorandum of the Government of the Virgin Islands, pp. 3–4, and also need not be repeated here.

Governor and the Legislature in accordance with its own terms. More specifically, the Government points out that Act No. 2375, approved December 24, 1968, governed the leasing of former Submarine Base property, of which Parcel No. 7 was a part, at the time the Lease was executed. Section 1 of Act No. 2375 added a new section 505(6) to Title 29 of the Virgin Islands Code, providing, in relevant part:

In no case shall the Authority have the power to sell, lease, mortgage, pledge or otherwise dispose of or encumber, any real property *without the approval of the Legislature.*[2] (Emphasis added.)

The Lease, on its face, merely bears the seal of the Legislature and the following handwritten words on the signature page:

> approved
>
> /s/ David Puritz
> Chairman Finance Committee
> 5/27/69

It was established at trial that the Lease was not approved by a majority vote of the Legislature, a quorum being present. (Tr. 67.) It was further established that there were no meetings of the Legislature between May 19, 1969 and June 2, 1969. (Tr. 64.)[3]

In a similar vein, the Government argues that the Lease itself specifically provided:

*Section 32. Approvals Required*

It is agreed that this lease is conditional upon and subject to the approval of (a) the Governor of the Virgin Islands and (b) the Legislature of the Virgin Islands *to the extent required by law.* (Emphasis added.)

---

[2] Reference should be made to footnote 2 and footnote 3 (except the last paragraph) of Post-Trial Memorandum of the Government of the Virgin Islands, p. 5.

[3] The Lease was sent to the Senate on May 21, 1969, and was returned to the Port Authority on May 29, 1969. (Tr. 64.)

Yet, the Lease was signed in the following fashion:

Approved:    /s/ Ralph M. Paiewonsky
             Governor of the Virgin Islands
             Chairman, Virgin Islands Port
             Authority

The typewritten phrase "Governor of the Virgin Islands," appearing on the signature page, was crossed out by hand, and the phrase "Chairman, Virgin Islands Port Authority" was handprinted below it. There was no evidence tending to show that at the time Mr. Paiewonsky signed the lease, he was still Governor of the Virgin Islands. (Tr. 40.) The Lease nowhere bears the signature of the person who was Governor, as of the pertinent date.

It was brought out at trial that there were four copies of the Lease. One copy, Exhibit 1, was maintained in the files of the Finance Committee; another copy, Exhibit 2, was in the files of the Port Authority (now kept at the Department of Property & Procurement); yet a third, Exhibit 3, was maintained at the office of the Recorder of Deeds; and a fourth copy, Exhibit A, was in the files of Bay Corporation. Exhibits 3 and A differ from Exhibits 1 and 2. On the former two, the words "Governor of the Virgin Islands" were stricken out and the words "Virgin Islands Port Authority Board" substituted, in Section 32. The testimony adduced at trial demonstrated to the Court that these changes were made subsequent to the time that the Lease was submitted to the Legislature for approval. (Tr. 41.)

Bay Corporation takes the position that while the Legislature did not approve the Lease by formal vote, nevertheless the requirements of Act No. 2375 were met. Bay Corporation argues, in essence, that the Legislature had the power to delegate its lease-approval authority to the Committee on Finance, that the Legislature could delegate this authority either by formal or informal action, and that both prior and subsequent to May 27, 1969, the

Legislature did in fact informally delegate its authority to the Finance Committee. In short, Bay Corporation asserts that the approval of the Lease by the Finance Committee constituted approval of the Legislature within the meaning of Act No. 2375.

As for the Government's contention that the Lease was never signed by the Governor in accordance with its own Section 32, Bay Corporation argues that the Lease did not require the Governor's approval on the following theory: the parties to the Lease only intended to provide therein for the minimum number of approvals required by law. At the time the Lease was prepared by the Virgin Islands Airport and Industrial Resource Agency, the law required the approval of both the Legislature and the Governor. The Lease was, accordingly, fashioned to reflect this requirement. However, by the time the Lease was executed, Act No. 2375 had become effective. That enactment, in addition to creating the Port Authority, eliminated the requirement of gubernatorial approval of the Lease. As a result, the signature page of the Lease was amended by striking out the place for the Governor's signature and substituting in its stead a place for the signature of the Chairman of the Port Authority. An oversight by the parties, however, prevented Section 32 from being changed to conform to the altered signature page. Thus, when the Lease was presented to the Legislature for approval, it was internally "inconsistent." However, subsequent to the "approval" of the Lease by the Finance Committee, the mistake was discovered and the appropriate conforming changes were made in Section 32, at least on Exhibits 3 and A, by Mrs. Eleanor Heckert of Bay Corporation and Mr. Alton Adams of the Port Authority. (Tr. 120.)

We will deal first with what we believe to be the less complex of the Government's arguments, namely, that the

Lease is void because it was not approved in accordance with its own terms.

■ One of our conclusions from reviewing the evidence is that this Lease was both executed and altered in a noticeably sloppy fashion. It was pointed out, indeed, that the Lease contains more than one significant mistake in addition to the problem with Section 32,[4] and, of course, it was proven that the Lease was "corrected" without agreement to the changes made by all parties concerned. Nevertheless, we do not believe that these are fatal flaws.

■ This Court believes that Section 32 is not ambiguous —but that it does *not* make the signature of the Governor a requirement for the viability of the Lease. Section 32 specifically states that the Governor's approval would be necessary only "to the extent required by law." To this Court, that phrase cannot be overlooked, and it means that the Governor's signature would only be necessary if the law required his approval. Since the Lease was executed while Act No. 2375 was in effect, his signature was *not* required.[5]

■ At best, it could be argued that, in light of the signature page, the Lease is ambiguous on this point. In that event, of course, we are bound to construe the Lease in favor of defendant Bay Corporation, for the Lease was prepared by the Virgin Islands Airport and Industrial Resources Agency. Restatement of Contracts, § 236.

We can find no logical explanation for Mr. Paiewonsky's approval of this Lease. His signature thereon seems to have

---

[4] The Lease incorrectly identified the subject premises as Parcel No. 18 rather than Parcel No. 7.

[5] We are basically in agreement with Bay Corporation that the parties to the Lease merely intended to comply with the minimum requirements of the law concerning approvals. We believe that their intent was initially carried out in two ways. First, when the Lease was initially prepared, Section 32 was worded to conform to Act No. 1976, which required the approval of the Governor and the Legislature except when the latter was not in session. Second, Section 32 was worded to include the phrase "to the extent required by law." Contrast Grammer v. Virgin Islands Corporation, 3 V.I. 588, 235 F2d (3rd Cir. 1956).

been quite superfluous in light of Act No. 2375 and Section 32 of the Lease as initially presented to the Legislature.

The more difficult question, however, is whether the approval of the Lease by the Finance Committee of the Legislature[6] was effective. Frankly, we sympathize with both sides on this issue. The Government's position is appealing because it is grounded upon more straightforward, logical, and simple legal and factual interpretations. Bay Corporation's position, on the other hand, is inviting because it is based on the realities of the operation of the Legislature in 1969, particularly, that the Legislature functioned relatively informally, with little attention to technical, if important, details. Moreover, Bay Corporation's position takes into account the fact that the parties to this Lease, including the Legislature, all believed that they were conforming to the requirements of the law when they prepared and executed the Lease, and acted in good faith.

On the whole, however, we believe the Government has the stronger case. In the first place, the Government has in its favor the wording of Act No. 2375, which, particularly, in light of Acts Nos. 1976 and 2794,[7] lends itself to the interpretation that approval of the Legislature as a whole, rather than of any committee thereof, was an absolute requirement.

Secondly, the Government can rely on the fact that the Legislature, although it concededly has the right to do so by passage of a bill,[8] never *formally* delegated its lease-approving authority to the Finance Committee.

---

[6] We are persuaded, and we so find, that the Finance Committee as a body approved the Lease. (Tr. 62.)

[7] See footnote 3 (except the last paragraph) of Post-Trial Memorandum of the Government of the Virgin Islands, p. 5.

[8] The Government admits that:
> The Legislature could, of course, pass a bill which, when signed into law by the Governor, would provide that government leases need be approved only by the Finance Committee of the Legislature . . . . Post-Trial Memorandum of the Government of the Virgin Islands, p. 7, n. 5.

Thirdly, the Government can place great weight on Rule XVI, § 4 of the Rules of the Legislature of the Virgin Islands, which provides:

Unless otherwise required by the Organic Act of the Virgin Islands, the laws of the Virgin Islands, or by these rules, any action which can be taken by the Legislature requires only a majority vote of those present, a quorum being present.

Exhibit F. The evidence shows that this Rule was never formally suspended, pursuant to Rule XVIII, § 1,[9] at the time the Lease was "approved" by the Finance Committee.

Fourthly, the Government's position is bolstered by a line of cases which Bay Corporation admits is well-established, holding that executive officials acting pursuant to clearly delineated statutory authority cannot "by any course of action bind the Government to anything beyond [their] explicit statutory powers . . ." Defendant's Summation, p. 8. See, e.g., In re Hooper's Estate,[10] 5 V.I. 518, 359 F.2d 569 (3rd Cir. 1966); Reese v. Government of the Virgin Islands, 4 V.I. 177, 277 F.2d 329 (3rd Cir. 1960); Grammer v. Virgin Islands Corporation, 3 V.I. 588, 235 F.2d 27 (3rd Cir. 1956); Sargeant v. Government of the Virgin Islands, 10 V.I. 245 (D.V.I. 1973); Government of the Virgin Islands v. Ottley, Civil Nos. 3, 285 and 58-1970 (D. St. T. & St. J., filed March 7, 1972).

Finally, the Government has in its favor the uncontroverted testimony of James Wisby, Counsel to the Legislature, that, in his opinion, the Legislature could not

---

[9] Rule XVIII, § 1 provides:
No standing rule of the Legislature may be repealed except upon an affirmative vote of two-thirds of the members of the Legislature, one day's notice being given; but any rule may be temporarily suspended by a vote of two-thirds of the members of the Legislature. Exhibit NN.

[10] We are also impressed with the two statements made by Mr. David Puritz, former Chairman of the Finance Committee, which strongly suggest, as the Government contends, that Mr. Puritz either mistakenly believed that the Committee had the power to approve Port Authority leases, Puritz Deposition, pp. 11–12, or that he recognized that where the law provided only for approval by the Legislature, leases had "no business coming to me." Exhibit 12, p. 80.

informally delegate its authority to approve leases to the Finance Committee—that, indeed, the approval of the Lease by the Finance Committee in the absence of a formal delegation of the authority to do so by the Legislature, was illegal. (Tr. 107.) We did not find Mr. Wisby's testimony to be incredible either because it was partisan or because it was "inherently unsound," as Bay Corporation suggests. To the contrary, we found his testimony to be reasonable.

By contrast, Bay Corporation has a greater number of obstacles to overcome before it can succeed with its defense. It must argue that the Legislature had the authority to change its Rules informally, despite Rules XVI, § 4 and XVIII, § 1, and that it did so in the case of certain leases simply by failing to object to the approval of those leases by the Finance Committee.

In candor, we find Bay Corporation's arguments to be circuitous: because the Finance Committee approved certain leases, the necessary conclusion is that the Legislature had delegated its authority to the Committee, and because the Legislature could delegate its authority to the committee, the Committee could approve certain leases. Put another way, the Committee's approval of certain leases was self-justifying; the fact that it approved the leases meant that it had the authority to do so.

■ Bay Corporation's arguments pose an additional problem. They equate the concept of changing a legislative rule of procedure with the concept of delegation of authority. While we appreciate that the line which separates these two concepts can be indistinct, and that they can overlap, we are nonetheless of the opinion that the concepts are different; the delegation of authority by a legislature to a committee does not involve merely a procedural change. It cannot be equated, say, with requiring all votes to be by secret ballot rather than by a show of hands.

■ Indeed, it is not difficult to understand why legislatures are often said to have the power to disregard their own rules of procedure. State ex rel. Todd v. Essling, 128 N.W.2d 307 (Minn. 1964), and cases cited therein. Rules which are procedural affect only form, not substance, of actions taken by legislatures.

However, where the delegation of authority is concerned, more than legislative rules alone are involved. Delegation of authority requires more than a procedural change. It affects not only form but substance as well. We believe our Legislature has been fully cognizant of the difference between the two concepts. As Acts Nos. 1976 and 3057 demonstrate, the Legislature was aware that when it wished to delegate its authority to approve leases to a particular committee, it was required to pass a bill to that effect rather than merely to vote, pursuant to Rule XVIII, § 1, for a change in its procedural rules.[11]

■■ Both sides have presented commendable post-trial briefs in support of their respective positions and their highly laudable efforts have made the job of this Court to determine questions of fact and of law that much easier. We are compelled to find, based on their exertions and our review of the case, that as a matter of law the Legislature could not delegate its authority to approve the Lease in question here by an informal course of action. The approval of this Lease by the Finance Committee was in direct violation of Act No. 2375 and Rule XVI, § 4. The evidence adduced at trial did not show, at least, not to the satisfaction of this Court, that the Legislature delegated its lease-approval authority to the Finance Committee in a lawful fashion, and therefore *did* show that the approval of this Lease by the Finance Committee did *not* constitute approval of the Legislature.

---

[11] See generally Exhibit 12, pp. 80–83.

The foregoing conclusions do not resolve this case, however. While we have been unable to find that the Finance Committee's "approval" of the subject Lease was legally sufficient, the fact remains that during 1969, that Committee "approved" close to two dozen Port Authority Leases,[12] if arguably not more,[13] in violation of Acts Nos. 2375 and 1976. We are satisfied that this activity by the Committee rose to the level of a "practice" which was accepted by all parties to the leases—or, certainly, was never objected to—until the Government later began to appreciate the infirmity of its financial position. We believe this "practice" is simply evidence, as Mr. Wisby stated, (T. 85–86) of the informal manner in which the Legislature conducted its business seven years ago.

We do not mean to suggest by the foregoing that this "usage" makes the Finance Committee "approvals" legally sufficient, or that the failure of the Government to object to this particular Lease until recently estops it from asserting that the Lease is unlawful. Reese v. Government of the Virgin Islands, supra; Sargeant v. Government of the Virgin Islands, supra; In re Hooper's Estate, supra. We do mean to indicate, however, that these facts prevent us from agreeing with the Government on the result which

[12] E.g., Exhibits AA, BB, CC, DD, EE, FF, GG, HH, II, JJ, KK, and LL were leases "approved" by the Finance Committee after February 11, 1969, the effective date of Act No. 2375. Exhibits Q, R, S, T, U, V, W, X and Y were Leases "approved" by the Finance Committee before the effective date of Act No. 2375 but after the 1969 Regular Session of the Legislature convened on January 13, 1969. Because this latter group of leases was considered while the Legislature was in session, they were required by Act No. 1976 to be "approved by the Legislature." They may therefore be considered in the same category as the former group.

Arguably, Exhibit K, a permit to Antilles Air Boats, approved by the Finance Committee on February 7, 1968, while the Legislature was in regular session, can be considered with the other two groups of leases, although the Government argues that "because it was revocable at any time, it was not required by Act No. 1976 to be approved by the Legislature." Post-Trial Memorandum of the Government of the Virgin Islands, p. 9.

[13] See Exhibits CCC, DDD, EEE, HHH, TT and Z.

should be reached on the basis of our findings of fact and conclusions of law.

■ It is our opinion, in light of the large number of leases that were improperly approved by the Finance Committee,[14] the length of time that these leases have been in effect, and indications from the evidence that the tenants involved have made substantial improvements to their leasehold properties (certainly the evidence shows that Bay Corporation has improved Parcel No. 7), that we should retread the path followed in Government of the Virgin Islands v. Ottley, supra. With only minor alterations, which we make below, the language of that case can aptly be applied to the situation before us today:

To make this ruling other than prospective can open the flood gates to a multiplicity of suits by the Government to recover monies paid [for leases entered into] in good faith based on procedures, which though now held to be illegal, had been established and practiced by the Government without previous contest. The Court is strongly of the opinion that only by the prospective application of this rule will injustice and hardship be averted. These are consequences which the Court cannot in good conscience ignore. It will be enough for the Government that the principle and the law are clearly and firmly established . . . . From this ruling forward all persons dealing with the government will be on notice that if they [enter into leases] with the Government in violation of [applicable provisions of the Virgin Islands Code], they will have no recourse in the event the Government elects to bring suit for the return of the public funds thus expended in violation of law.

Precedent for prospective application of judicial rulings in circumstances such as these are not wanting. See Thomas v. Government of the Virgin Islands, 8 V.I. 259 (D.V.I. 1971), and the cases therein cited.

In accordance with the foregoing, our findings and conclusions will be applied prospectively only, and the complaint of the Government will be dismissed.

---

[14] See note 12, supra.