BOBBIE FERSTLE and CAROL HOLMES, Plaintiffs

v.

AMERICAN SAMOA GOVERNMENT,COSMETOLOGY BOARD
OF AMERICAN SAMOA, DEPARTMENT OF PUBLIC SAFETY,
HELGA LEFITI, GRETCHEN L. S. MAKAIWI, as
individuals and as members of the Cosmetology
Board, and DOES I-X, Defendants

High Court of American Samoa
Trial Division

CA No. 4-87

May 22, 1987

Before KRUSE, Associate Justice.

Counsel: For Plaintiffs, William Reardon
         For Defendants, Martin Yerick,
         Assistant Attorney General

Defendant American Samoan Government, hereafter "ASG", moves for summary judgment in the above-entitled matter, asserting absolute immunity as a matter of law from suit premised on a cause of action provided under the Federal Civil Rights Act, 42 U.S.C. §§ 1983 and 1985.[1]

Section 1983 is remedial in nature and authorizes a civil action for deprivation of federal rights against a person acting under the color of state or territorial law, custom, or usage. The Supreme Court has variously explained the main purpose of this enactment as: enforcing the provisions of the Fourteenth Amendment; and interposing the federal courts between the States and the people, as guardians of the people's federal rights. Monroe v. Pape, 365 U.S 167

---

[1]. Plaintiffs' complaint is equivocal in setting out the basis of their claim for relief. However, in responsive Memorandum of Points & Authorities opposing an earlier ASG motion for dismissal, plaintiffs clarify their action as grounded on 42 U.S.C. §§ 1983 and 1985.

(1961); Mitchum v. Foster, 407 U.S 225 (1972); District of Columbia v. Carter, 409 U.S 418 (1973). As a measure then to secure compliance with the fourteenth amendment, which on its face speaks only to "States", the inclusion of "Territories" within the enactment was explained in District of Columbia v. Carter, supra. The Court here noted: that section 1983 was derived from an Act of Congress of April 20, 1871, (17 Stat 13), referred to as the Klu Klux Klan Act; as originally enacted, section 1 of the 1871 Act applied only to action under color of the law of any "State"; the phrase "or Territory" was added without explanation in the 1874 codification and revision of the United States Statutes at large (Rev. Stat. § 1979); that since the territories are not "States" within the meaning of the fourteenth amendment, this addition was presumably an exercise of Congress' power to regulate the Territories under art IV, § 3, cl 2 of the Constitution. Carter, 409 U.S. 418, 424 n. 11.

Justice Brennan, writing for the Court, suggested policy reasons for this inclusion in 1874. First, the Court noted that logistical difficulties at the time did not allow, as a practical matter, effective control directly from Washington over the various territories and their officials. Accordingly, the extent of self government (albeit delegated) actually existing in the territories was nearly as broad as that enjoyed by the states. The Court further added that, given the transitional nature of territorial status ("foredained" to statehood), Congress could treat the Territories, for purposes of enforcing federal rights, as "inchoate States".[2]

American Samoa as an inchoate State seems inconsistent with reality, and while 42 U.S.C. § 1983 does on its face extend to violations

---

[2]. The case involved a § 1983 suit against the District of Columbia. The Court held that the District could not come within the meaning of "State or Territory" as appearing in the enactment. The reasoning was: federal control in Washington was effective and practical; and the District by its very nature could not be treated as an "inchoate State". Unlike the transitional character of a territory, the capital's makeup in the governmental scheme was lasting and permanent.

committed under color of territorial law, this Court has recently stated in <u>Banks v. American Samoan Government</u>, 4 ASR 2d 113 (1987), that the enactment

> cannot be taken as a decision by Congress to extend every application of every constitutional provision into every territory. Such a construction would be radically inconsistent with <u>The Insular Cases</u>, which were decided some years after the language of section 1983 was first enacted and which held that some constitutional provisions remained inappliable in unincorporated territories.

<u>Id</u>. at 128 n.7. Cf. <u>Tuivai v. Suiava</u> 2 A.S.R. 2d 35 (1983).

### IMMUNITY

ASG argues that the eleventh amendment to the United States Constitution effectively secures immunity from suit to an unconsenting state, and that same legal immunity is enjoyed by territories such as American Samoa.

Plaintiffs in reply make the curious observation that there is an apparent conflict between art. III § 2 of the Constitution on the one hand, and the eleventh amendment thereof on the other. Further, it is contended that while the States have been zealous in expansionism with the notion of "sovereign immunity", plaintiffs pose the question as to whether anyone could "seriously contend that a territory can't be sued because of the Eleventh Amendment, in its own courts, by its own citizens ... ."

If there is a conflict between these two constitutional provisions, it would appear to follow on the usual rules of construction that a succeeding amendment provision ought to prevail. Indeed, as a matter of historical fact, the eleventh amendment came about in shock reaction to the federal courts entertaining a suit against the State of Georgia instituted by a citizen of another in the case of <u>Chisholm v. Georgia</u>, 2 U.S. (2 Dall.) 419 (1793). <u>See</u> <u>Monaco v. Mississippi</u>, 292 U.S 313 (1934).

Plaintiffs' claims herein are premised on a statute intended to enforce the fourteenth

amendment, thus the relevant conflict to look for, if any, is whether this amendment took anything away from the earlier eleventh.

The Supreme Court has held that the eleventh amendment, and therefore the doctrine of sovereign immunity as applicable to the states, was necessarily limited by the provisions of the fourteenth amendment. Significantly, § 5 thereof empowered Congress to legislate appropriately to enforce the fourteenth amendment. Fitzpatrick v. Bitzer, 427 U.S 445 (1976). Congressional override of state immunity was therefore available, however the court has required that any Congressional intent to override must be clear and explicit. See Employees v. Dept. of Public Health & Welfare, 411 U.S 279 (1973); Hutto v. Finney, 437 U.S 678 (1978).

With regard to the Civil Rights Act of 1871, 42 U.S.C. § 1983, the cases are settled that Congress did not intend by the general language of the Act to overturn the eleventh amendment immunities of the several states. In Edelman v. Jordan, 415 U.S 651 (1974), the court held that the word "person" as appearing in § 1983 did not include "states", and accordingly the enactment did not abrogate eleventh amendment immunity. This holding was subsequently reaffirmed in Quern v. Jordan, 440 U.S 332 (1979). See also Alabama v. Pugh, 430 U.S 781 (1978); Pennhurst State School & Hospital v. Haldeman, 465 U.S 89 (1984); Kentucky v. Graham, 473 U.S ___ (1985).

Accordingly, absent waiver of sovereign immunity or consent to suit, an action for damages under § 1983 may not be maintained against any of the several states.

TERRITORIAL IMMUNITY

It follows that the next question before the Court is whether the doctrine of sovereign immunity[3] is applicable to ASG, the governmental

_____

    3. The doctrine of sovereign immunity from suit, rooted in the ancient common law, was originally based on the monarchical, semi religious tenet that "the King can do no wrong." In modern times, it is better explained as a rule of social policy that protects the state from burdensome interference with state funds, property, and

164

entity of the unincorporated territory of American Samoa.

The little authority that exists on the subject favors an affirmative holding.

In <u>Kawananakoa v. Polybank</u>, 205 U.S 349 (1907), the territory of Hawaii asserted its immunity from suit to being joined, without its consent, to a foreclosure action. Justice Holmes explained the source of sovereign immunity on general principles as follows:

> A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends... As the ground is thus logical and practical, the doctrine is not confined to powers that are sovereign in the full sense of juridical theory but naturally is extended to those that in actual administration originate and change at their will the law of contract and property, from which persons within the jurisdiction derive their rights. A suit presupposes that the defendants are subject to the law invoked. Of course it cannot be maintained unless they are so. But that is not the case with a territory of the United States, because the Territory itself is the fountain from which rights ordinarily flow.

<u>Id.</u> at 353.

This principle of immunity was also extended by the court to be applicable to the unincorporated territory of Porto Rico in <u>Porto Rico v. Rosaly</u>, 227 U.S 270 (1912). Here the Court was concerned with interpreting § 7 of the Organic Act of Porto Rico which, included the language "to sue and be sued". The Court first noted that immunity from suit is necessarily inferred "from a mere consideration of the nature of the Porto Rican government." <u>Id.</u> at 274. Secondly, to interpret § 7 of the enactment as taking away the implied

---

instrumentalities. 72 Am. Jur. 2d, States, etc. § 99

immunity would be, as the court reasoned, destructive of the system of government created by Congress for Porto Rico "with defined and divided powers, legislative, executive and judicial ... ." Id. at 277.

Upon general principles, the doctrine of sovereign immunity must be implicit with the system of government existing in the Territory of American Samoa. In actuality, the territorial government in American Samoa has all those sovereign attributes to pass, amend, repeal and enforce laws from which persons within its jurisdiction derive their rights. The system of government created for the territory and deriving its ultimate authority from Congress in 48 U.S.C. § 1661(c) has defined and divided powers, legislative, executive and judicial. It possesses automony similar to those of a sovereign government or state. See also In Re Hooper's Estate, 359 F.2d 569 (3d Cir. 1966).

Upon the practical considerations stated by Justice Holmes, it is this Court's conclusion that the Territory of American Samoa possesses immunity from suit without its consent or waiver.[4]

The conclusion follows that plaintiffs' action under 42 U.S.C. § 1983 directed against ASG for monetary damages is subject to the territory's claim to immunity as asserted in its answer filed herein. From precedent established in connection with the other United States territories, American Samoa would be excluded from the term "person" as used in § 1983. U. Insular De Trabajadores v. Autoridad De Las Fuentes, 431 F. Supp 435 (D.P.R. 1975), Carreras Roena v. Camara de Comerciantes, Etc., 440 F. Supp 217 (D.P.R. 1976).

This Court is further not impressed with plaintiffs' interpretation of the Government Tort Liability Act, A.S.C.A. § 1203 et. seq., to predicate a waiver. Plaintiffs argue that the following language: "as a private individual under like circumstances," appearing in § 43.1203(a); and

---

4. While American Samoa differs with other territories to the extent that its territorial government is not a product of an Organic Act, this difference does not detract from its autonomy and self governing features which the Supreme Court found determinative in Kawakanakoa and Porto Rico v. Rosaly.

"where the government, if a private person, would be liable," appearing in § 43.1209(a), constitutes a waiver of immunity to the extent whereby "ASG" maybe then juxtaposed within the meaning of "person" as contained in 42 U.S.C. § 1983.

The suggestion at best is desperate, and we decline to give such unintended effect to the Government Tort Liability statute which particularizes the limited circumstances of sovereign consent.

### 42 U.S.C. § 1985 CLAIM

Plaintiffs' conspiracy claim under 42 U.S.C. § 1985 remains to be considered.

The complaint appears to be wanting in specificity and is short on the pleading requirements set out in Griffin v. Beckenridge, 403 U.S 88 (1971). Be that as it may, suffice it for us to say that the same principles applicable to the definition of a "person" under 42 U.S.C. § 1983 are also relevant to the same issue under § 1985. Thompson v. New York, 487 F. Supp 212 (N.D.N.Y. 1979). See also True v. New York State Dept. of Correctional Services, 613 F. Supp 27 (W.D.N.Y. 1984).

For the same reasons appearing above, that the meaning of the word "person" in section 1983 excludes "State", qua State, (as well as excluding "Territories"), we hold that plaintiffs' claim directed against ASG under § 1985 is also subject to the territorial immunity asserted.

### CONCLUSION

ASG's motion for summary judgment is granted. An action for damages pursuant to 42 U.S.C. §§ 1983 and 1985 does not lie against the entity, qua entity, American Samoa Government absent waiver of immunity or consent to suit thereunder.

It is so ORDERED.